COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-06-091-CR

 

 

MAURICE GLENN WILLIS, SR.                                                APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 372ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

    MEMORANDUM
OPINION ON REMAND AND ON REHEARING[1]

 

                                              ------------

After reviewing Appellant
Maurice Glenn Willis, Sr.=s motion for
rehearing, we deny the motion.  We
withdraw our June 12, 2008 opinion and judgment on remand and substitute the
following. 








This case is before us on
remand from the court of criminal appeals. 
On original submission, we overruled Willis=s five points complaining of the trial court=s denial of his post-conviction motion for forensic DNA testing.  See Willis v. State, No.
02-06-00091-CR, 2007 WL 2792518, at *3 (Tex. App.CFort Worth Sept. 27, 2007) (mem. op.) (not designated for
publication).  The day before we handed
down the Willis opinion, the court of criminal appeals handed down its
opinion in Blacklock v. State, 235 S.W.3d 231 (Tex. Crim. App.
2007).  The court of criminal appeals
subsequently granted Willis=s petition for discretionary review, vacated our judgment, and
remanded the case back to this court to consider the effect, if any, of Blacklock
on the reasoning and analysis in our previous opinion.  See Willis v. State, No. PD-1741-07, 2008
WL 383062, at *1 (Tex. Crim. App. Feb. 13, 2008).  We will once again affirm.








Blacklock was convicted in
1995 of an aggravated robbery and an aggravated sexual assault.  Blacklock, 235 S.W.3d at 232.  The complainant knew Blacklock and identified
him as the one who robbed and sexually assaulted her.  Id. 
The State relied on evidence of DNA testing of semen from the
complainant=s vaginal
smears to show that a sexual assault occurred, but the evidence was
inconclusive on the issue of identity.  Id.  In 2005, Blacklock filed a motion for DNA
testing of the semen from the complainant=s vaginal smears and of semen left by her attacker on her pants
and panties during the attack.[2]  Id. 
Blacklock alleged in part that there was no indication that the State
tested the semen on the pants or panties. 
Id.  The trial court denied
his motion, finding in part that he had failed to show that identity was or is
an issue and had also failed to show, by a preponderance of the evidence, that
he would not have been convicted if exculpatory results had been obtained
through DNA testing.  Id.

The court of appeals affirmed
the trial court=s ruling
denying Blacklock=s motion for
DNA testing, reasoning in part that identity was not an issue because Blacklock
had failed to allege that identity is an issue and because the complainant
testified at the 1995 trial Athat she knew [Blacklock] and that he had robbed and sexually
assaulted her.@  Id.








The court of criminal appeals
disagreed with the court of appeals, stating in part, AThat the victim testified that she knew appellant and identified him
as her attacker is irrelevant to whether appellant=s motion for DNA testing makes his identity an issue and whether it
shows that exculpatory DNA tests would prove his innocence.@  Id. at 233.  Accordingly, AThe language and legislative history of Article 64.03(a)(1)(B) make it
very clear that a defendant, who requests DNA testing, can make identity an
issue by showing that exculpatory DNA tests would prove his innocence.@  Indeed, Aa defendant proves his right to DNA testing of evidence by showing
that exculpatory DNA results would establish the defendant=s innocence.@  Id. n.4.

The court observed that
Blacklock=s motion
alleged in part as follows:

Had the biological evidence
been subjected to proper DNA testing capable of determining the identity of the
donor of the semen, as defendant believes is possible today, and such results
excluded the defendant as the donor, it is reasonably probable that the
defendant would not have been prosecuted or convicted.

Id. at
n.2.  The court reasoned that Blacklock=s motion for DNA testing Ahas fairly alleged, and shown by a preponderance of the evidence, that
the [complainant=s] lone
attacker is the donor of the material for which [Blacklock] seeks DNA testing,@ thus Aappear[ing]
to allege that DNA testing of this material . . . will exclude [Blacklock] as
the [complainant=s] attacker.@  Id. at 232.  It concluded, AThus, on this record, exculpatory DNA test results, excluding
[Blacklock] as the donor of this material, would establish [Blacklock=s] innocence.@  Id.








In the case before us, the
court of criminal appeals stated that we had affirmed the trial court=s denial of Willis=s second motion for DNA testing Abased in part on the trial court=s finding that identity was not an issue in the case because [Willis]
committed the murder in the presence of a third party.@  See Willis, 2008 WL
383062, at *1.  Considering this
observation in light of the reasoning and holding in Blacklock that a
complainant=s testimony
that she knew the accused and her identification of him as the perpetrator is irrelevant
as to whether the defendant can make identity an issue with exculpatory DNA
test results, our task here is to determine whetherCnotwithstanding our original opinion=s reliance on the trial court=s finding that identity was not an issue because Willis committed the
murder in the presence of a third partyCWillis made identity an issue by showing that exculpatory DNA results
would establish his innocence.  See
Blacklock, 235 S.W.3d at 233.  Willis
did not make such a showing. 

The relevant portion of
Willis=s second motion for forensic DNA testing reads as follows:

There
was evidence containing biological material that was secured in relation to the
offense that is the basis of the challenge[d] conviction and was in the
possession of the State during the trial of the offense, [b]ut:

 

(1) was not previously subjected to DNA testing

 

(B)
through no fault of hi[m][.] For reason that are of a nature such that the
interest of justice require DNA testing. 
And that the nature of the for[e]going styled and numbered cause require
DNA testing [criminal procedure Article 64.01 a.b.]

 

Movant
present[s] to the court that there was material evidence in the possession of
the state during the prosecution of the case, and at the time of conviction
it was known that if subjected to scientific testing it would more likely
th[a]n not establish the identity of the person who committed the offense, or
exclude him from the group of person[s] who could have committed the offense.
[code of criminal proc. Art. 38.89] [Emphasis added.]








Willis thus alleged that
scientific testing of the material would (1) establish the identity of the
person who committed the offense or (2) exclude him from the group of persons
who could have committed the offense.  It
would seem that Willis made a similar showing by his allegations as the appellant
in Blacklock, but he has not.  As
did the court in Blacklock, we must consider Willis=s allegations in light of the facts of the case; we do not consider
his allegations in a vacuum.

In Blacklock, the
victim had been sexually assaulted, and the State had collected semen samples
from the victim=s vaginal
smears, pants, and panties.  The
appellant=s allegation
that it was reasonably probable that he would not have been prosecuted or
convicted had the biological evidence been subjected to proper DNA testing, and
such results excluded him as the donor, certainly did make the necessary
showing that exculpatory DNA results would establish his innocence because
the semen was that of the Alone attacker@ and no one else.  Id. at 232.  Indeed, there was no evidence recited in the
opinion that the semen came from anyone but the perpetrator.  Thus, logically, if the material was tested
and excluded the appellant as the donor, then the results would establish his
innocence because the donor of the materialCwho is the person responsible for sexually assaulting the victim and
no one elseCwould not be
the appellant.













Our case is different from Blacklock
because if the material was tested and excluded Willis as the donor, this
result would not establish his innocence because the donor of the
material is not necessarily the personCor Alone
attacker@Cultimately responsible for murdering Willis=s stepfather.  The donor of the
material could be Willis=s stepfather
or any other person who had previously been in, on, around, or somehow in
contact with the items that Willis seeks to be tested and left behind DNA
material.[3]  To put it in the same terms as the court in Blacklock,
on this record, Willis has not made identity an issue because he has not Afairly@ alleged and
shown, by a preponderance of the evidence, that DNA test results of the
material that he seeks to have tested, excluding him as the donor, would
establish his innocence.  See
Blacklock, 235 S.W.3d at 232B33.  Rather, the only thing that
testing the material would establish is that it is someone=s or something=s DNA
material.  See Prible v. State,
245 S.W.3d 466, 470 (Tex. Crim. App. 2008) (AEvidence of another person=s DNA in addition to Appellant=s is not exculpatory evidence in this case due to the additional
evidence presented at trial.  Thus, even
if the evidence was retested and determined to contain another person=s DNA . . . , it would not establish by preponderance of the evidence
that Appellant would not have been convicted if the jury had heard that DNA
from a third-party was present.@) (citation omitted); see also Bell v. State, 90 S.W.3d 301,
306 (Tex. Crim. App. 2002) (considering appellant=s due process claim and reasoning that, without more, the presence of
another person=s DNA at the
crime scene will not constitute affirmative evidence of appellant=s innocence).

Because the Blacklock opinion
does not alter the outcome in our previous decision on the issue of identity
and showing innocence, Willis, No. 02-06-00091-CR, 2007 WL 2792518, at
*2B3 (Tex. App.CFort Worth
Sept. 27, 2007), we again affirm the trial court=s denial of Willlis=s post-conviction motion for forensic DNA testing.[4]

 

DIXON W. HOLMAN

JUSTICE

 

PANEL F: 
DAUPHINOT, HOLMAN, and WALKER, JJ.

DAUPHINOT, J. dissents without opinion.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 








DELIVERED: 
July 17, 2008[4]








 

 

 

 

 











[1]See Tex. R. App. P. 47.4.





[2]A
trial court must order DNA testing only if the statutory requirements of
article 64.03 are met, that is, only if (1) the evidence still exists and
identity was or is an issue in the case; and (2) the convicted person
establishes by a preponderance of the evidence that the person would not have
been convicted if exculpatory results had been obtained through DNA
testing.  Tex. Code Crim. Proc. Ann. art. 64.03 (Vernon 2006).





[3]Willis
requested that the following items be tested: finger nails, tennis shoes, two
jackets, shirt, shorts, boxers, pillow case, mattress pad, iron, telephone,
pager, cartridges, wood club, duffel tennis shoes, rug, and watch.  





[4]The
court of criminal appeals handed down its opinion in Routier v. State,
No. AP-75,617, 2008 WL 2486417 (Tex. Crim. App. June 18, 2008), shortly after
our original opinion issued on June 12, 2008. 
Willis thereafter timely filed a motion for rehearing alleging that Athe
facts of this case are similar to those in Routier.  Just as the Court of Criminal Appeals ordered
DNA testing in that case, this Court should order DNA testing in this case.@  Willis specifically directs us to a portion
of the Routier opinion reasoning, AWe think that adding DNA
evidence that would corroborate the appellant=s
account of an unknown intruder to the evidentiary mix could readily have tipped
the jury=s
verdict in the appellant=s
favor.@  Id. at *12.  And, AIn our estimation, DNA
evidence showing that an unknown intruder . . . had left blood on the night
shirt and the door from the utility room to the garage, along with a facial
hair and a pubic hair, would more likely than not have caused the jury to
harbor a reasonable doubt as to the appellant=s
guilt and decline to convict her.@  Id. 
Without specifically stating as much, Willis then sets forth a number of
references from the record that have the effect of raising the implication that
James AShorty@ Howze,
an acquaintance of Lorenzo ALo@
Watts, the decedent, may have been the individual responsible for murdering
Watts.  He points to trial testimony that
Watts had fired a gun at Howze a few days before Watt=s
body had been found, that Howze stole the gun from Watts, that Watts told Howze
to stay out of his house, and that he and Watts argued a lot.  Having once again examined all of the testimony
at his July 2000 trial, we disagree with Willis=s
assertion that the facts of this case are similar to those in Routier.  Unlike in Routier, in which the
appellant contended that an unknown intruder was responsible for murdering her
children, the evidence in this case showed that Howze, who was Watts=s Agood
friend,@ not
only lived next door to Watts in a property owned by Watts, but that he was a
regular visitor of Watts=s
abode.  Assuming as we must that all of
the post-conviction DNA testing to which Willis is entitled would prove
favorable to him, the jury would likely not have considered it significant in
its assessment of the evidence that DNA material linked to Howze was discovered
on the items that he requests be tested in light of the obvious fact that Howze
lived next door to Watts and often visited Watts=s
residence.  Indeed, the jury could very
well have reasonably expected that Howze=s DNA
material would be discovered at Watts=s residence.  And unlike in Routier, Willis has not
specifically identified what form of biological material the requested items
are apparently supposed to contain.  We
thus do not know if he seeks to have hair, blood, saliva, or some other
biological material tested.  Consequently,
we must conclude that there is a less than 50% chance that Willis=s
jury would not have convicted him had it been aware of presumptively favorable
DNA test results.  See id. at *11.