

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

---

**NO. 2-06-091-CR**

MAURICE GLENN WILLIS, SR.                                        APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION ON REMAND AND ON REHEARING[1]

------------

After reviewing Appellant Maurice Glenn Willis, Sr.'s motion for rehearing, we deny the motion. We withdraw our June 12, 2008 opinion and judgment on remand and substitute the following.

This case is before us on remand from the court of criminal appeals. On original submission, we overruled Willis's five points complaining of the trial court's denial of his post-conviction motion for forensic DNA testing. *See Willis v. State*, No. 02-06-00091-CR, 2007 WL 2792518, at *3 (Tex. App.—Fort

---

[1] *See* TEX. R. APP. P. 47.4.

Worth Sept. 27, 2007) (mem. op.) (not designated for publication). The day before we handed down the *Willis* opinion, the court of criminal appeals handed down its opinion in *Blacklock v. State*, 235 S.W.3d 231 (Tex. Crim. App. 2007). The court of criminal appeals subsequently granted Willis's petition for discretionary review, vacated our judgment, and remanded the case back to this court to consider the effect, if any, of *Blacklock* on the reasoning and analysis in our previous opinion. *See Willis v. State*, No. PD-1741-07, 2008 WL 383062, at *1 (Tex. Crim. App. Feb. 13, 2008). We will once again affirm.

Blacklock was convicted in 1995 of an aggravated robbery and an aggravated sexual assault. *Blacklock*, 235 S.W.3d at 232. The complainant knew Blacklock and identified him as the one who robbed and sexually assaulted her. *Id*. The State relied on evidence of DNA testing of semen from the complainant's vaginal smears to show that a sexual assault occurred, but the evidence was inconclusive on the issue of identity. *Id*. In 2005, Blacklock filed a motion for DNA testing of the semen from the complainant's vaginal smears *and* of semen left by her attacker on her pants and panties during the

attack.[2]  *Id.*  Blacklock alleged in part that there was no indication that the State tested the semen on the pants or panties.  *Id.*  The trial court denied his motion, finding in part that he had failed to show that identity was or is an issue and had also failed to show, by a preponderance of the evidence, that he would not have been convicted if exculpatory results had been obtained through DNA testing.  *Id.*

The court of appeals affirmed the trial court's ruling denying Blacklock's motion for DNA testing, reasoning in part that identity was not an issue because Blacklock had failed to allege that identity is an issue and because the complainant testified at the 1995 trial "that she knew [Blacklock] and that he had robbed and sexually assaulted her."  *Id.*

The court of criminal appeals disagreed with the court of appeals, stating in part, "That the victim testified that she knew appellant and identified him as her attacker is irrelevant to whether appellant's motion for DNA testing makes his identity an issue and whether it shows that exculpatory DNA tests would prove his innocence*."  Id.* at 233.  Accordingly, "The language and legislative history of Article 64.03(a)(1)(B) make it very clear that a defendant, who

---

[2] A trial court must order DNA testing only if the statutory requirements of article 64.03 are met, that is, only if (1) the evidence still exists and identity was or is an issue in the case; and (2) the convicted person establishes by a preponderance of the evidence that the person would not have been convicted if exculpatory results had been obtained through DNA testing.  TEX. CODE CRIM. PROC. ANN. art. 64.03 (Vernon 2006).

3

requests DNA testing, can make identity an issue by showing that exculpatory DNA tests would prove his innocence." Indeed, "a defendant proves his right to DNA testing of evidence by showing that exculpatory DNA results would establish the defendant's innocence." *Id*. n.4.

The court observed that Blacklock's motion alleged in part as follows:

Had the biological evidence been subjected to proper DNA testing capable of determining the identity of the donor of the semen, as defendant believes is possible today, and such results excluded the defendant as the donor, it is reasonably probable that the defendant would not have been prosecuted or convicted.

*Id*. at n.2. The court reasoned that Blacklock's motion for DNA testing "has fairly alleged, and shown by a preponderance of the evidence, that the [complainant's] lone attacker is the donor of the material for which [Blacklock] seeks DNA testing," thus "appear[ing] to allege that DNA testing of this material . . . will exclude [Blacklock] as the [complainant's] attacker." *Id*. at 232. It concluded, "Thus, on this record, exculpatory DNA test results, excluding [Blacklock] as the donor of this material, would establish [Blacklock's] innocence." *Id*.

In the case before us, the court of criminal appeals stated that we had affirmed the trial court's denial of Willis's second motion for DNA testing "based in part on the trial court's finding that identity was not an issue in the case because [Willis] committed the murder in the presence of a third party." *See Willis*, 2008 WL 383062, at *1. Considering this observation in light of

4

the reasoning and holding in *Blacklock* that a complainant's testimony that she knew the accused and her identification of him as the perpetrator is *irrelevant* as to whether the defendant can make identity an issue with exculpatory DNA test results, our task here is to determine whether—notwithstanding our original opinion's reliance on the trial court's finding that identity was not an issue because Willis committed the murder in the presence of a third party—Willis made identity an issue by showing that exculpatory DNA results would establish his innocence. *See Blacklock*, 235 S.W.3d at 233. Willis did not make such a showing.

The relevant portion of Willis's second motion for forensic DNA testing reads as follows:

> There was evidence containing biological material that was secured in relation to the offense that is the basis of the challenge[d] conviction and was in the possession of the State during the trial of the offense, [b]ut:
>
>> (1) was not previously subjected to DNA testing
>>
>> (B) through no fault of hi[m][.] For reason that are of a nature such that the interest of justice require DNA testing. And that the nature of the for[e]going styled and numbered cause require DNA testing [criminal procedure Article 64.01 a.b.]
>
> Movant present[s] to the court that there was material evidence in the possession of the state during the prosecution of the case, *and at the time of conviction it was known that if subjected to scientific testing it would more likely th[a]n not establish the identity of the person who committed the offense, or exclude him from the group of person[s] who could have committed the offense*. [code of criminal proc. Art. 38.89] [Emphasis added.]

5

Willis thus alleged that scientific testing of the material would (1) establish the identity of the person who committed the offense or (2) exclude him from the group of persons who could have committed the offense. It would seem that Willis made a similar showing by his allegations as the appellant in *Blacklock*, but he has not. As did the court in *Blacklock*, we must consider Willis's allegations in light of the facts of the case; we do not consider his allegations in a vacuum.

In *Blacklock*, the victim had been sexually assaulted, and the State had collected semen samples from the victim's vaginal smears, pants, and panties. The appellant's allegation that it was reasonably probable that he would not have been prosecuted or convicted had the biological evidence been subjected to proper DNA testing, and such results excluded him as the donor, certainly did make the necessary showing that exculpatory DNA results would establish his innocence *because the semen was that of the "lone attacker" and no one else*. *Id*. at 232. Indeed, there was no evidence recited in the opinion that the semen came from anyone but the perpetrator. Thus, logically, if the material was tested and excluded the appellant as the donor, then the results would establish his innocence because the donor of the material—who is the person responsible for sexually assaulting the victim and no one else—would not be the appellant.

6

Our case is different from *Blacklock* because if the material was tested and excluded Willis as the donor, this result would *not* establish his innocence because the donor of the material is not necessarily the person — or "lone attacker" — ultimately responsible for murdering Willis's stepfather. The donor of the material could be Willis's stepfather or any other person who had previously been in, on, around, or somehow in contact with the items that Willis seeks to be tested and left behind DNA material.[3] To put it in the same terms as the court in *Blacklock*, on this record, Willis has not made identity an issue because he has not "fairly" alleged and shown, by a preponderance of the evidence, that DNA test results of the material that he seeks to have tested, excluding him as the donor, would establish his innocence. *See Blacklock*, 235 S.W.3d at 232–33. Rather, the only thing that testing the material would establish is that it is someone's or something's DNA material. *See Prible v. State*, 245 S.W.3d 466, 470 (Tex. Crim. App. 2008) ("Evidence of another person's DNA in addition to Appellant's is not exculpatory evidence in this case due to the additional evidence presented at trial. Thus, even if the evidence was retested and determined to contain another person's DNA . . . , it would not establish by preponderance of the evidence that Appellant would not have

---

[3] Willis requested that the following items be tested: finger nails, tennis shoes, two jackets, shirt, shorts, boxers, pillow case, mattress pad, iron, telephone, pager, cartridges, wood club, duffel tennis shoes, rug, and watch.

7

been convicted if the jury had heard that DNA from a third-party was present.")

(citation omitted); *see also Bell v. State*, 90 S.W.3d 301, 306 (Tex. Crim. App.

2002) (considering appellant's due process claim and reasoning that, without

more, the presence of another person's DNA at the crime scene will not

constitute affirmative evidence of appellant's innocence).

Because the *Blacklock* opinion does not alter the outcome in our previous

decision on the issue of identity and showing innocence, *Willis*, No. 02-06-

00091-CR, 2007 WL 2792518, at *2–3 (Tex. App.—Fort Worth Sept. 27,

2007), we again affirm the trial court's denial of Willlis's post-conviction motion

for forensic DNA testing.[4]


                                        DIXON W. HOLMAN
                                        JUSTICE

PANEL F: DAUPHINOT, HOLMAN, and WALKER, JJ.

DAUPHINOT, J. dissents without opinion.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

8

DELIVERED:  July 17, 2008[4]

---

[4] The court of criminal appeals handed down its opinion in *Routier v. State*, No. AP-75,617, 2008 WL 2486417 (Tex. Crim. App. June 18, 2008), shortly after our original opinion issued on June 12, 2008.  Willis thereafter timely filed a motion for rehearing alleging that "the facts of this case are similar to those in *Routier*.  Just as the Court of Criminal Appeals ordered DNA testing in that case, this Court should order DNA testing in this case."  Willis specifically directs us to a portion of the *Routier* opinion reasoning, "We think that adding DNA evidence that would corroborate the appellant's account of an unknown intruder to the evidentiary mix could readily have tipped the jury's verdict in the appellant's favor."  *Id*. at *12.  And, "In our estimation, DNA evidence showing that an unknown intruder . . . had left blood on the night shirt and the door from the utility room to the garage, along with a facial hair and a pubic hair, would more likely than not have caused the jury to harbor a reasonable doubt as to the appellant's guilt and decline to convict her."  *Id*. Without specifically stating as much, Willis then sets forth a number of references from the record that have the effect of raising the implication that James "Shorty" Howze, an acquaintance of Lorenzo "Lo" Watts, the decedent, may have been the individual responsible for murdering Watts.  He points to trial testimony that Watts had fired a gun at Howze a few days before Watt's body had been found, that Howze stole the gun from Watts, that Watts told Howze to stay out of his house, and that he and Watts argued a lot.  Having once again examined all of the testimony at his July 2000 trial, we disagree with Willis's assertion that the facts of this case are similar to those in *Routier*. Unlike in *Routier*, in which the appellant contended that an unknown intruder was responsible for murdering her children, the evidence in this case showed that Howze, who was Watts's "good friend," not only lived next door to Watts in a property owned by Watts, but that he was a regular visitor of Watts's abode.  Assuming as we must that all of the post-conviction DNA testing to which Willis is entitled would prove favorable to him, the jury would likely not have considered it significant in its assessment of the evidence that DNA material linked to Howze was discovered on the items that he requests be tested in light of the obvious fact that Howze lived next door to Watts and often visited Watts's residence.  Indeed, the jury could very well have reasonably *expected* that Howze's DNA material would be discovered at Watts's residence.  And unlike in *Routier*, Willis has not specifically identified what form of biological material the requested items are apparently supposed to contain.  We thus do not know if he seeks to have hair, blood, saliva, or

(continued...)

9

‍<sup>4</sup>(...continued)

some other biological material tested.  Consequently, we must conclude that there is a less than 50% chance that Willis's jury would not have convicted him had it been aware of presumptively favorable DNA test results.  *See id*. at *11.

10