

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---
## NO. AP-77,054
---

**RODNEY REED, Appellant**

**v.**

**THE STATE OF TEXAS**

---
## ON DIRECT APPEAL IN
## CAUSE NO. 8701 FROM THE 21ST DISTRICT COURT
## BASTROP COUNTY
---

**KELLER, P.J., filed a dissenting opinion.**

In recommending that appellant's motion for DNA testing under Chapter 64 be denied, the trial court found that appellant failed to satisfy two of the statutory requirements. The Court, however, remands for the trial court to make findings on four other statutory requirements. Because the trial court's findings are sufficiently supported and those findings are, with respect to either of the two statutory requirements that were addressed, sufficient to deny relief, I see no point in remanding this case for further findings.

## I. BACKGROUND

## A. General Chronological Background

Stacey Stites was sexually assaulted and murdered over twenty years ago, on April 23, 1996. The facts of the case are recited in detail in our opinion on direct appeal and in an opinion on appellant's second subsequent habeas application.[1] DNA evidence revealed that appellant's intact sperm was found inside the victim, which indicated that he had sexual intercourse with her shortly before her death.[2] In rejecting a factual sufficiency claim on direct appeal, we observed that the DNA evidence connected appellant to the sexual assault, and the forensic evidence indicated that the person who sexually assaulted the victim was also the person who killed her.[3]

Appellant was tried and convicted of the capital murder of Stites in May of 1998. After we affirmed the conviction on direct appeal in 2000, appellant filed six state habeas applications, the last three of which were disposed of in 2009.[4] Appellant also pursued remedies on federal habeas, and the denial of relief in the federal system was ultimately upheld by the Fifth Circuit on January 10, 2014.[5] On April 8, 2014, the State filed a motion to set an execution date. On July 14, 2014, a hearing was held to set an execution date. On that date, shortly before the hearing, appellant had filed a motion for DNA testing. Relying upon his motion and the State's agreement to test some

---

[1] *See Reed v. State*, No. AP-73,135 (Tex. Crim. App. Dec. 6, 2000) (not designated for publication); *Ex parte Reed*, 271 S.W.3d 698, 701-12 (Tex. Crim. App. 2008).

[2] *See Reed*, 271 S.W.3d at 705.

[3] *Id.* at 712 (quoting from our direct appeal opinion).

[4] *See Ex parte Reed*, No. WR-50,961-04 and WR-50,961-05 (Tex. Crim. App. January 14, 2009) (not designated for publication); *Ex parte Reed*, No. WR-50,961-06 (Tex. Crim. App. July 1, 2009) (not designated for publication).

[5] *See Reed v. Stephens*, 739 F.3d 753 (5th Cir. 2014).

items for DNA, appellant requested that no execution date be set. The State requested an execution date of January 14, 2015, which would give appellant six months to litigate any issues. In accordance with the State's recommendation, the trial court set the execution date for January 14, 2015.

In November 2014, a hearing was held on appellant's DNA motion. At the end of the hearing, the trial court stated that "this motion was filed untimely and calls for unreasonable delay, that there's no reasonable probability the defendant would not have been convicted had the results been available at the trial of the case." At the State's request, however, the trial court reset the execution date to March 5, 2015. On December 2, 2014, appellant requested a subpoena to obtain a personal reference sample for the purpose of the DNA testing that had been agreed to on July 14, 2014.

### B. Trial Court's Findings

On December 16, 2014, the trial court filed findings of fact and conclusions of law. These findings are extensive and amplify the trial court's two overarching bases for denying relief. The findings are also supported by the record.

### 1. *Delay*

With respect to the first basis—that the DNA motion was made for the purpose of unreasonably delaying the execution of sentence—the trial court pointed to thirteen factors in support of its conclusion. First, the trial court stated that appellant had not provided the court "with any information regarding time estimates for the extensive DNA testing he seeks." Second, the trial court observed that appellant "filed his Chapter 64 motion on the day [the trial court] initially set the

[appellant's] execution date." The trial court believed that the timing of the Chapter 64 filing "was not coincidental but a designed tactic to delay the setting of [appellant's] execution date" and, when combined with appellant's failure to propose "concrete timelines" was indicative of a "repeated desire to infinitely delay his execution date."

Third, the trial court pointed out that appellant's DNA motion "was filed thirteen years after Chapter 64's enactment and approximately three years after Chapter 64's most recent amendment." The trial court remarked that "there was no legal impediment to filing a Chapter 64 motion during this entire period" and pointed out that appellant "has been continuously represented by counsel during his postconviction proceedings." Fourth, the trial court explained that appellant's "first informal request for DNA testing occurred three days after" the Fifth Circuit upheld the denial of relief in the federal system—indicating that appellant "only sought DNA testing after his other efforts at relief proved unsuccessful."

Fifth, the trial court pointed out that appellant's counsel had represented Larry Swearingen and that appellant's motion for DNA testing was similar to Swearingen's. Consequently, the trial court concluded that appellant's counsel "had the legal and factual knowledge to file [appellant's] present Chapter 64 motion more than a year before it was filed."

Sixth, the trial court pointed to appellant's proceedings in other courts as showing his intent to delay. The trial court observed that appellant "has been cited for abuse of the writ on five separate occasions by the Court of Criminal Appeals." Moreover, the United States District Court for the Western District of Texas had ruled that appellant had untimely sought forensic testing and was dilatory in submitting an affidavit. And the trial court cited the Fifth Circuit as also finding that

appellant submitted evidence in an untimely fashion. The trial court concluded these proceedings show that appellant "has engaged in a dilatory and piecemeal litigation strategy throughout his postconviction proceedings" and that his DNA motion "is a continuation of such behavior."

Seventh, the trial court observed that appellant "has thrice asked the Court to indefinitely postpone his execution date." The court concluded that appellant's requests for, "essentially, indefinite stays works against him in proving that he is not attempting to unreasonably delay his execution."

Eighth, the trial court remarked that, at the live evidentiary hearing on the DNA motion, appellant "asked for DNA testing on a substantial amount of evidence that he had not mentioned in his Chapter 64 motion." The trial court considered these "last-minute amendments to his Chapter 64 pleadings" to be yet another example of dilatory tactics.

Ninth, the trial court found appellant's explanation for these amendments—that he learned of the existence of certain items for the first time from the State's inventory in response to the DNA motion—to be inadequate because one of the items had been heavily litigated during prior postconviction proceedings and other items that were supposedly revealed for the first time in the State's inventory had been referred to in appellant's DNA motion.

Tenth, the trial court observed that appellant possesses extracts from some of the evidence for which he seeks testing. The court concluded that appellant's request "to test these items via Chapter 64 when he could conduct the testing himself, especially given his offer to pay for DNA testing," also supports the trial court's conclusion that the request is for the purpose of unreasonable delay.

Eleventh, appellant has also requested testing of items the State has already agreed to test. This request for "redundant testing" was also seen by the trial court as an attempt to unreasonably delay execution.

Twelfth, the trial court pointed to the fact that appellant's counsel "had repeatedly stated, in pleadings and in court, that he plans to soon file postconviction motions for relief pursuant to Articles 11.071 and 11.073," but despite this "promise of diligence," applicant "has not filed either pleadings."

Finally, the trial court remarked that applicant "waited more than four months to obtain a subpoena for a reference sample from himself for purposes of the agreed-to DNA testing."

## 2. *Probability of Conviction*

With respect to the second overarching basis for denying relief—that appellant has not shown by a preponderance of the evidence that he would not have been convicted but for exculpatory results from DNA testing—the trial court pointed to three factors in support of its conclusion. First, the trial court observed that the State's "case on guilt-innocence was strong." Appellant's DNA was found both on and inside the victim, his sperm was intact in the vaginal cavity, and his saliva was on the victim's breasts. The peri-mortem injury to the victim's anus, the victim's bunched up panties, a broken pants zipper, the victim being partially unclothed, and bruises on the victim's arms, torso, and head were obvious signs of sexual assault and showed that the victim did not consent to sexual activity. Other evidence showed that appellant "frequented the area of the victim's disappearance at the time the victim disappeared" and "matched the height of someone who would have fit the adjusted seat in the victim's truck."

Second, the trial court remarked that many of the items appellant seeks to test "were already before the jury and the jury knew they did not match" him. For example, the trial court explained, a DNA and forensics expert testified that one of the hairs that appellant seeks to test did not match his genetic profile. A Department of Public Safety forensics expert testified that none of the hairs collected from the victim's body microscopically matched appellant's hair. And appellant's fingerprints did not match any of the fingerprints collected during the course of the investigation.

Third, the trial court found that "none of the evidence Reed seeks to test was so integral to the State's case that the jury would have acquitted despite knowing that [Reed's] DNA was not on the item." The court pointed to the fact that many of the items were in a truck shared with the victim's fiancé and evidence demonstrated that other people had ridden in the truck. Moreover, many of the items "have been handled by ungloved individuals." At best, the trial court concluded, exculpatory results would merely "muddy the waters, not prove by a preponderance that he would have been acquitted."

## II. ANALYSIS

In several contexts, we have held that a court need only address issues that are sufficient to dispose of the case.[6] Courts on appeal, this Court on habeas, and trial courts on habeas may all decline to address an issue that is not necessary to the disposition of the case because of the court's disposition of some other issue.[7] If, for example, a court grants relief to a habeas applicant on one ground, it may decline to reach other grounds for relief, as long as the unreached grounds would not

---

[6] *Ex parte Reyes*, 474 S.W.3d 677, 680-81 (Tex. Crim. App. 2015).

[7] *Id.*

afford greater relief.[8]

The same principle applies here. There are a number of requirements that must be satisfied in order for a convicted person to be entitled to DNA testing under Chapter 64.[9] The failure to meet any one of these requirements is fatal to a defendant's claim under the statute.[10] The trial court concluded that appellant failed to satisfy two of the statutory requirements for obtaining DNA testing. If the trial court is correct as to either of the two requirements, then it need not address whether appellant has satisfied other requirements.[11]

An appellate court should remand a case when "the trial court's erroneous action or failure or refusal to act prevents the proper presentation of a case" to the appellate court.[12] We are now in a position to determine whether the trial court's reasons for denying testing are correct. If either of the trial court's two bases for denying relief are correct, there is no "erroneous action or failure or refusal to act" that would serve as a basis for a remand. A remand might well provide further ammunition for a denial of relief, but if either of the trial court's conclusions is correct, further conclusions would not change the outcome of this appeal.

---

[8] *Id.*

[9] *See* TEX. CODE CRIM. PROC. art. 64.03(a).

[10] *Bell v. State*, 90 S.W.3d 301, 306 (Tex. Crim. App. 2002) ("a court must order testing only if the statutory preconditions are met").

[11] The trial court could have chosen to address more than two requirements, but it was not obligated to do so; indeed, the trial court did more than it had to by addressing two.

[12] *See* Tex. R. App. P. 44.4(a) ("A court of appeals must not affirm or reverse a judgment or dismiss an appeal if (1) the trial court's erroneous action or failure or refusal to act prevents the proper presentation of a case to the court of appeal; and (2) the trial court can correct its action or failure to act.")

In any event, this is not a difficult case. The trial court has given numerous record-supported reasons for its conclusion that appellant has failed to show that the DNA motion "is not made to unreasonably delay the execution of sentence or administration of justice."[13] Appellant waited over thirteen years after the passage of Chapter 64 to file a DNA motion and nearly seven years after it was last amended.[14] He had time to file six habeas applications with this Court but not to file a single motion for DNA testing. He filed his DNA motion only after his other legal avenues were exhausted and after the State sought to set his execution date. He has given no timeframe for when testing might be complete and he has sought to test a large number of items. He has been cited for untimely submitting matters in federal court,[15] and he has been dilatory in connection with his DNA motion even after it was filed—broadening the scope of his testing requests in the evidentiary hearing beyond what was originally sought in his motion, taking four months to even start the process of submitting his own reference sample, and continually seeking to indefinitely postpone his execution date.

This is not the conduct of a convicted person who knows he is innocent and thinks that DNA testing will prove it. Nor is it the conduct of a defense team who has any reason to believe the convicted person is innocent and thinks that DNA testing would prove it. This is the conduct of a defense team that realizes there is no hope of exoneration and is simply trying to delay the inevitable

---

[13] *See* TEX. CODE CRIM. PROC. art. 64.03(a)(2)(B).

[14] The statute has been amended since applicant filed his motion. *See* Acts 2015, 84th Leg., ch. 70 (S.B. 487), § 2, eff. Sept. 1, 2015; Acts 2015, 84th Leg., ch. 1276 (S.B. 1287), § 11, eff. Sept. 1, 2015.

[15] *See Reed v. Stephens*, 739 F.3d 753, 768 n.5, 776 n.12.

execution.

And then there is the trial court's second basis for denying relief: that appellant has not shown by a preponderance of the evidence that, had exculpatory DNA results been obtained, he would not have been convicted.[16] The trial court's supporting reasons for this basis are not nearly as numerous as for the first basis but they do not have to be. Appellant was tied to this murder by DNA testing: his sperm was found inside the victim. That sperm was intact, indicating that appellant had sex with the victim at a relatively short time before the murder. The forensic evidence shows that the rapist was the murderer and the DNA evidence shows that appellant was the rapist.

Appellant's only answer to the presence of his own sperm in the victim is to advance the theory from his own interested witnesses that he had some prior relationship with the victim and so the sex might have been consensual. In proceedings in federal court, Judge Lee Yeakel effectively answered this contention by explaining that none of applicant's evidence was reliable:

> Without reliable evidence demonstrating how this happened consensually, the DNA evidence effectively condemns Reed. And what evidence is there of a prior relationship? Statements of people who claim to have seen the two together. Yet, many of these are the very sort of eyewitness accounts that have been shown in numerous cases to be unreliable. Most of these witnesses did not know Stacey Stites, and identified her from memory by viewing her photograph. Those who claimed to have known her were proven to be badly mistaken. All of these witnesses were family, friends, or associates of Reed's. Reed was never able to identify anyone who was a friend, family member, or associate of Stacey Stites who claimed to have been aware of a relationship between Reed and Stites. In short, there is no reliable evidence that ties Reed to Stites before her murder.[17]

Without reliable evidence that appellant had a prior relationship with the victim, DNA evidence

---

[16] *See* TEX. CODE CRIM. PROC. art. 64.03(a)(2)(A).

[17] *Reed v. Thaler*, 2012 U.S. Dist. LEXIS 83422, *133 (W.D. Tex. June 15, 2012).

pointing to the involvement of another individual "would not exonerate appellant because it would show nothing more than there was another party to the crime, at best."[18]

Appellant is not entitled to DNA testing. We do not need a remand to arrive at that conclusion. Because the Court remands this case when doing so is unnecessary, I respectfully dissent.

Filed: June 29, 2016
Do Not Publish

---

[18] *Wilson v. State*, 185 S.W.3d 481, 485 (Tex. Crim. App. 2006).