

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-318-CR

ANTONIO M. LACY                                                              APPELLANT

V.

THE STATE OF TEXAS                                                               STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In one point, Appellant Antonio M. Lacy appeals the trial court's denial of his motion for DNA testing. We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. Factual and Procedural History

In 1991, a jury convicted Lacy of murder and assessed his punishment at confinement for life.[2] In 2005, Lacy filed a motion for forensic DNA testing, and the trial court appointed counsel for him. In 2008, the State filed its response and proposed findings of fact and conclusions of law. The State also filed two affidavits from the Fort Worth Police Department property and records custodians, indicating that the Property Room no longer possessed any evidence relating to this cause but that the Forensics Division had the following items: (a) fingernails, (b) blood, and (c) pulled scalp hair. The trial court adopted all of the State's proposed findings and conclusions and denied Lacy's motion.

The trial court adopted the following fact findings:

1. Evidence exists that might contain biological material.

. . . .

8. The murder occurred at a dry cleaners.

9. Two boys testified that they saw [Lacy] running away from the dry cleaners around the time of the murder carrying something that looked like a knife wrapped in material.

---

[2] This court affirmed Lacy's conviction on appeal. *See Lacy v. State*, No. 02-91-00236-CR (Tex. App.–Fort Worth Feb. 3, 1993, pet. ref'd) (not designated for publication).

10. Three witnesses testified that [Lacy] admitted to them that he had murdered someone.

11. [Lacy] told two of the witnesses that the murder occurred at a dry cleaners.

. . . .

13. There was testimony from a witness that [Lacy] came to his house and he was out of breath and sweaty holding a bloody knife on the day of the murder.

. . . .

15. One witness did not recall any marks or scars on the attacker.

16. There was no evidence that the assailant was injured during the attack on the sixty-one year-old victim.

. . . .

18. The victim "was covered with blood."

. . . .

20. The victim sustained "nine stab wounds[,]" "nine cut wounds[,]" "multiple abrasions[,]" and a "laceration."

21. There is no evidence that the blood collected by law enforcement belonged to anyone other than the victim.

22. There is no evidence that the blood collected belonged to the victim's attacker.

23. The absence of [Lacy's] DNA would not prove that he did not commit the offense.

24. The victim had defensive wounds consistent with "put[ting] up . . . her arms in a defensive posture."

3

25. The victim sustained the following defensive wounds: (1) a stab wound to the hand, (2) a stab wound to her "distal left forearm," (3) a cut wound to the "dorsal surface of the right forearm," (4) cut wound to the thumb.

26. Dr. Peerwani [then-chief medical examiner for Tarrant, Parker, and Denton Counties, who performed the autopsy on the victim] concluded that "she put up a defensive posture and sustained those defensive wounds on the back of the hand and arm" in "an attempt to ward off blows."

27. There is no evidence that the victim fought back.

28. There is no evidence that the victim scratched her assailant.

29. The evidence is consistent with the sixty-one year-old victim only putting up her arms in front of her body to protect her torso and face from the repeated knife attack.

30. There is no evidence that the assailant's DNA would be present under the victim's fingernails.

31. The absence of [Lacy's] DNA under the victim's fingernails would not prove that [Lacy] did not commit the offense.

[Internal citations omitted.]

The trial court did not find that identity was in issue. It adopted the following conclusions of law:

. . . .

4. There is overwhelming evidence to support [Lacy's] guilt.

. . . .

8. Absence of [Lacy's] DNA in the victim's fingernail evidence would not prove [Lacy's] innocence.

4

9. [Lacy] has failed to show that "there is a 51% chance that" he would not have been convicted;

10. [Lacy] is unable to prove by a preponderance of the evidence that he would not have been convicted had exculpatory results been obtained through additional DNA testing.

11. This Court **DENIES** [Lacy's] motion for DNA testing.

[Internal citations omitted.] This appeal followed.

### III. Discussion

### A. Standard of Review

We employ a bifurcated standard of review to a trial court's decision to deny a motion for DNA testing, affording almost total deference to the trial court's determination of issues of historical fact and application-of-law-to-fact issues that turn on credibility and demeanor and reviewing de novo other application-of-law-to-fact issues. *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002).

A court must order DNA testing only if the statutory preconditions are met. *Bell v. State*, 90 S.W.3d 301, 306 (Tex. Crim. App. 2002). Here, the trial court found that evidence existed that might contain biological material. *See* Tex. Code Crim. Proc. Ann. art. 64.03(a)(1)(A)(i) (Vernon Supp. 2008). But the trial court still had to find the following other relevant statutory preconditions met before it could order forensic DNA testing: (1) that identity

5

was an issue in the case; and (2) that Lacy established by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing. *Id*. art. 64.03(a)(1)(B), (2). In making this determination, the trial court had to obey the following restriction:

> A convicted person who . . . whether before or after conviction, made a confession or similar admission in the case may submit a motion under this chapter, and the convicting court is prohibited from finding that identity was not an issue in the case solely on the basis of that . . . admission, as applicable.

*Id*. art. 64.03(b).

## B. Analysis

In his sole issue, Lacy argues that the trial court abused its discretion by denying his motion for DNA testing because it considered his admissions. However, although the record reflects that the trial court considered Lacy's admissions, this did not violate article 64.03(b) because the statute only prohibits the trial court from finding that identity was not an issue in the case "*solely* on the basis of" admissions. *Id.* (emphasis added). The trial court's findings show that it considered evidence other than Lacy's admissions, and it actually based its conclusion that Lacy's motion should be denied upon Lacy's failure to meet his burden of proof under article 64.03(a)(2). *See Hood v. State*, 158 S.W.3d 480, 482–83 (Tex. Crim. App.) (rejecting appellant's argument that the trial court erred by finding that DNA results would not be

6

exculpatory because the evidence at trial conclusively established appellant's guilt), *cert. denied*, 545 U.S. 1146 (2005).  Based on our review of the trial court's findings of historical fact, we cannot say that the trial court erred in arriving at this conclusion.  Therefore, we overrule Lacy's sole issue.

## IV. Conclusion

Having overruled Lacy's sole issue, we affirm the trial court's judgment.


PER CURIAM

PANEL: MCCOY, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: April 2, 2009