

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00186-CR

_____

JERRARD MCGARY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th Judicial District Court
Bowie County, Texas
Trial Court No. 09F0377-005

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Convicted in 1997 of murdering[1] his wife, Jerrard McGary has most recently had the Fifth Judicial District Court in Bowie County, Texas, deny what appears to be McGary's third motion[2] to have DNA testing done on evidence connected to the crime. McGary appeals pro se. We affirm the ruling of the trial court because (1) McGary has not shown that, even if the desired DNA evidence tested in his favor, it would exculpate him; (2) the trial court denied McGary's latest DNA motion using both prior and current statutory standards; (3) the trial court could have reasonably found lack of reasonable grounds to appoint a new attorney for McGary; and (4) we may not address McGary's complaint concerning 2007 trial testimony.

[1]After his conviction, Jerrard McGary was sentenced to seventy-five years' imprisonment.

[2]The first case involving McGary that was filed with this Court was his petition for writ of mandamus, filed October 8, 2008, in which he asked this Court to instruct the trial court to rule on his motion for DNA testing so that it could proceed.

As we noted in that case, it appears that McGary had filed a motion for DNA testing in 2001, and counsel had been appointed in February 2002. That counsel took no action. In December 2002, and again in January 2003, McGary pointed this out by letter and asked for replacement counsel. That request was denied. It appears that nothing happened thereafter, until McGary's family retained counsel. That attorney, James Volberding, on February 6, 2007, filed a revised motion to appoint a DNA expert and to order DNA testing. A hearing was conducted October 9, 2007, and the State did not oppose the motion. Supplemental briefing was requested and provided before the end of 2007. No ruling was issued, despite two letters written to the judge, in March and May 2008, requesting a ruling.

We conditionally granted the mandamus November 8, 2008, and the trial court issued a ruling, containing a lengthy opinion, denying the motion shortly thereafter. On December 5, 2008, McGary appealed from that ruling.

McGary's next counsel, Alwin Smith, filed a brief March 9, 2009, in which he stated that, in his professional opinion, the appeal was frivolous. After being granted four extensions of time to file his pro se response, on September 3, 2009, McGary filed a motion requesting withdrawal of his appeal. We granted his request and dismissed the appeal. *See McGary v. State*, cause number 06-08-00226-CR.

It appears that, during the pendency of that appeal, McGary filed another motion for DNA testing. The trial court denied his motion, as effectively a duplicate of his prior (2007) motion. The trial court correctly pointed out that the motion presented in 2007 had been decided and that the ruling was final. However, we also note that the statutory authority for DNA testing was amended substantially, with an effective date of September 1, 2007. That means that the new motion would be analyzed under different rules than was the one filed before the amendments.

At his 1997 trial, McGary essentially argued self-defense: he stated that his wife attacked him with a kitchen knife; and, while he was trying to take the knife away from her, she was cut several times. He stated that, when he left the house shortly thereafter, she was alive. Now, thirteen years later, he posits that some unknown boyfriend may have then appeared after he left and delivered the fatal blow. After considering McGary's motion to appoint an expert and to order DNA testing, the trial court denied the motion.

*(1)*     *McGary Has Not Shown that, Even if the Desired DNA Evidence Tested in His Favor, It Would Exculpate Him*

McGary contends that the trial court erred by failing to order the State to deliver the evidence containing the testable material to the court or to explain why it could not be delivered. He argues that the State acted in bad faith, as demonstrated by its direction to the Texarkana Crime Laboratory to destroy the evidence, and by its failure to adequately explain its inability to deliver the evidence.

McGary correctly points out the statute's requirement that, on receipt of such a motion, the trial court is to direct the State either to deliver the evidence to the court or to explain why the State cannot. *See* TEX. CODE CRIM. PROC. ANN. art. 64.02(a)(2) (Vernon 2006). But McGary's complaint that the State did not respond in this instance was waived since the complaint was not raised with the trial court. *Shannon v. State*, 116 S.W.3d 52, 54–55 (Tex. Crim. App. 2003); *Sepeda v. State*, 301 S.W.3d 372, 375 (Tex. App.—Amarillo 2009, no pet.). Although the record in this appeal contains no copy of any response by the State, the first order denying testing clearly

3

recites that the State had provided a response and that the State had informed the court that, "as no appeal was filed after McGary's conviction, the police department destroyed evidence in their possession associated with this case including all vaginal swabs and any blood evidence."

Unfortunately, that information provided to the trial court by the State appears to be at least partially incorrect. Some of the evidence—previously sent for testing and not returned to the State—apparently has not been destroyed. To the second motion for DNA testing, McGary's counsel attached a letter, dated March 2, 2006, from the Southwest Institute for Forensic Sciences (SIFS) in Dallas, Texas, which listed several biological specimens that had been transferred there for analysis and that were still there.

In the most recent motion for DNA testing, McGary asked the court to order DNA testing on semen found in the victim's vagina; the bite mark on the victim's breast; blood said to have been detected on McGary's pants, shirt, and right shoe; and hairs or fibers collected in coin envelopes. Unlike the first motion, the current motion is supported by an affidavit that sets out the type of evidence involved and what McGary believes to be its current location and the chain of custody related to the items.

Article 64.03(a)(1)(A) provides that forensic DNA testing may be ordered only if:

> (1)     the court finds that:
>
> (A)     the evidence:
>
> (i)     still exists and is in a condition making DNA testing possible; and

4

(ii)     has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect; and

(B)     identity was or is an issue in the case; and

(2)     the convicted person establishes by a preponderance of the evidence that:

(A)     the person would not have been convicted if exculpatory results had been obtained through DNA testing; and

(B)     the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice.

TEX. CODE CRIM. PROC. ANN. art. 64.03(a) (Vernon Supp. 2009).  While some of the elements may arguably be satisfied,[3] at least one element—showing that McGary's hoped-for DNA results would net him an acquittal—fails.

McGary now posits that his wife may have had an unidentified boyfriend who came by the house and finished stabbing her to death almost immediately after McGary left her cut and bleeding, but alive.  Although this chain of events and the existence of a murderous boyfriend are theoretically possible, the likelihood of this combination of factors, based on analysis of the information provided, is miniscule.  Indeed, it is very little more than pure speculation.  Also, the

---

[3]While this record suggests that some of the evidence still exists, we have no indication whether it is in a condition making DNA testing possible.  It would seem that chain of custody does not present a problem—the remaining items have been traced into the hands of SIFS.  While identity was not an issue at trial—McGary admitted stabbing his wife—he now is attempting to show through DNA testing that his stabbings did not kill her, that is, that the identity of the real killer is in issue now.  McGary's arguments suggest he would maintain that his testing request was not made for unreasonable delay.

evidence McGary seeks to have tested would not exculpate McGary, but may merely place an added person at the scene of the crime.

In *Bell v. State*, 90 S.W.3d 301 (Tex. Crim. App. 2002), the Texas Court of Criminal Appeals reviewed a claim similar to McGary's in which the appellant sought to demonstrate the possibility of his innocence by proving that someone else's DNA was at the scene of the crime. The court determined in *Bell* that, without more, the presence of another person's DNA at the crime scene would not constitute affirmative evidence of the appellant's innocence and that, therefore, the denial of DNA testing did not violate the appellant's due-process rights. *Id*. at 306.

Expanding on that reasoning, the Texas Court of Criminal Appeals has since pointed out that the identity requirement in Chapter 64 relates to the issue of identity as it pertains to the DNA evidence. "Therefore, if DNA testing would not determine the identity of the person who committed the offense or would not exculpate the accused, then the requirement of Article 64.03(a)(2)(A) has not been met." *Prible v. State*, 245 S.W.3d 466, 470 (Tex. Crim. App. 2008).

Our task under Chapter 64 of the Texas Code of Criminal Procedure is to determine whether a defendant would have been convicted if the results of requested DNA testing are exculpatory. *See* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2). For purposes of this inquiry, we assume that the results of the DNA testing would prove favorable to appellant. *See Routier v. State*, 273 S.W.3d 241, 257 (Tex. Crim. App. 2008); *In re Morton*, No. 03-08-00585-CR, 2010 WL 45866 (Tex. App.—Austin Jan. 8, 2010, no pet.).

6

Moreover, our own review of the record supports the trial court's conclusion that there existed much less than a reasonable probability that testing would produce a different outcome. Even if the testing provided the results suggested by McGary, that alone falls short of creating a reasonable inference that someone else killed the victim, given the circumstances here. *See Prible*, 245 S.W.3d at 470 (mere presence of another person's DNA at crime scene does not constitute affirmative evidence of defendant's innocence); s*ee also Sepeda*, 301 S.W.3d at 376.

In short, evidence of another person's DNA at the crime scene, in addition to McGary's, would not provide exculpatory evidence for McGary. Thus, even if the evidence were retested and determined to contain another person's DNA, it would not establish by a preponderance of the evidence that McGary would not have been convicted. Indeed, it is equally arguable that proof of the existence of a boyfriend would militate in favor of convicting McGary as the furious husband who killed his straying spouse. We overrule this contention of error.

*(2) The Trial Court Denied McGary's Latest DNA Motion Using Both Prior and Current Statutory Standards*

McGary contends that the trial court erred by denying his 2009 DNA motion using the old standards it had employed in denying his earlier motion.[4] He argues this issue by detailing each

---

[4]In attempting to determine the actual nature of McGary's current complaint, we refer directly to McGary's brief, which sets out this issue as follows:

> Trial Court errored [sic] in denying Appellant's Motion for DNA Testing With Brief In Support under the June 2001 DNA standards when in fact his Motion for DNA Testing With Brief In Support was filed under the September 1, 2003 standards of Chapter 64, of Tex. Code of Crim. Procedure.

7

issue set out by the trial court in its order ruling on the prior motion, in which the court explained the procedures and requirements involved in McGary's attempt to obtain DNA testing.

The "Order Denying Petitioner's Second Motion for DNA Testing" is dated September 26, 2009. In that order, the court points out that the motion is identical to the one previously denied in a detailed order—and that McGary had dismissed his appeal from the ruling denying the earlier motion. From this Court's records, we note that the prior appeal was dismissed at McGary's request September 10, 2009.[5] The second motion was filed August 26, 2009, while McGary's appeal from the denial of the preceding motion was still pending with this Court.

Neither the order that is the subject of this appeal, nor its predecessor that is referenced by that order, were decided solely under the former statute. The trial court explained its ruling clearly reflecting a decision made based on both old and new versions of the statute. McGary's complaint is refuted by the trial court's order. We overrule this issue.

*(3)* *The Trial Court Could Have Reasonably Found Lack of Reasonable Grounds to Appoint a New Attorney for McGary*

McGary argues that, before denying his motion for DNA testing, the trial court erred by failing to appoint counsel, as required by Article 64.01(c) of the Texas Code of Criminal Procedure. This motion raised the same issues as did his prior motion for DNA testing. This motion contained some additional information and an affidavit. Nevertheless, the court had seen and ruled on these issues and arguments before. The previous motion for DNA testing was

McGary reiterates the nature of his claim as set out above at the beginning of his discussion of his second point.
[5]*McGary v. State*, cause number 06-08-00226-CR. Our mandate issued November 4, 2009.

presented by retained counsel and was denied. Appointed counsel then filed a brief stating that the appeal from that ruling was frivolous; and, on demand by the appellant, that appeal was withdrawn.

The trial court is required to appoint counsel if one is requested by an indigent and "the court finds reasonable grounds for a motion to be filed." TEX. CODE CRIM. PROC. ANN. art. 64.01(c) (Vernon Supp. 2009).[6] The appellant had already sought DNA testing on these grounds, lost, and dismissed his appeal, which means the prior ruling against him had become final. This careful trial court had delineated, in exhaustive detail, multiple grounds for denying the motion. Although some procedural frailties pointed out by the trial court were corrected, the underlying substance of the motion remained unaltered. Under these facts, it was within the authority of the trial court to determine that the motion was not based on reasonable grounds.[7] Finding no error, we overrule this contention.

*(4)      We May Not Address McGary's Complaint Concerning 2007 Trial Testimony*

In his appellate brief seeking DNA testing, McGary also attacks the admission of testimony by Detective Bill Eubanks at his 1997 trial. He argues that the detective's testimony about the crime scene and blood found there was inadmissible and, in a wandering discussion,

---

[6]An order denying a request for appointed counsel to assist in filing a motion for post-conviction DNA testing is not immediately appealable, and is properly raised on denial of the motion filed without assistance of counsel. *Gutierrez v. State*, 307 S.W.3d 318, 322 (Tex. Crim. App. 2010).

[7]*See id.*; *Bates v. State*, No. 01-08-00580-CR, 2010 WL 1839941 (Tex. App.—Houston [1st Dist.] May 6, 2010, no pet. h.); *Blake v. State*, 208 S.W.3d 693, 695 (Tex. App.—Texarkana 2006, no pet.).

9

complains about the detective's lack of personal knowledge about the blood types involved, an unidentified serologist's report that was not introduced, but that was referred to by the detective, and the lack of knowledge of DNA testing. None of these complaints has any relationship to the motion or ruling now on appeal. They are an attempt to now raise issues that would have been appropriate only in a direct appeal from the 1997 conviction. We may not address them.

We affirm the judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:      July 1, 2010
Date Decided:        July 15, 2010

Do Not Publish

10