Walter BELL, Appellant,

v.

The STATE of Texas.

No. 74243.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 6, 2002.

Terrence Leon Holmes, Beaumont, for Appellant.

Rodney D. Conerly, Assistant District Attorney, Beaumont, Matthew Paul, State's Attorney, Austin, for State.

### OPINION

JOHNSON, J., delivered the opinion of the court in which KELLER, P.J., MEYERS, PRICE, KEASLER, HERVEY, HOLCOMB and COCHRAN, JJ., joined.

In 1974, appellant was indicted separately for the capital murders of Irene and Fred Chisum. He was tried and convicted for the murder of Irene Chisum and received a death sentence that was later vacated and commuted to a life sentence. Appellant was then tried and convicted for the murder of Fred Chisum. He received a death sentence that was reversed based upon the ruling in *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). Appellant was tried, convicted and sentenced to death a second time, and in 1996 this Court affirmed that conviction. *Bell v. State*, 938 S.W.2d 35 (Tex.Crim. App.1996).

On August 22, 2001, appellant filed a Motion for Post Conviction DNA Testing pursuant to Chapter 64 of the Texas Code of Criminal Procedure. TEX.CODE CRIM. PROC. ANN. CH. 64 (2001). Appellant claimed that the state maintained possession over three items that may contain biological material. While appellant fails to describe these three items in his brief, a review of the record shows that the items in question, all found at the crime scene, are: 1) a hair; 2) a cigarette butt; and 3) a bath mat that contains blood stains. Appellant contends that DNA testing is warranted because it may show that another person was present at the crime scene, thus making the identity of the killer an issue as required by Chapter 64.[1] The state concedes that the items exist and are in its possession, but asserts that appellant has not met the mandates of Chapter 64. Specifically, the state claims that appellant has not met his burden of showing that DNA testing would change the outcome of the trial.

The convicting court agreed with the state and held that, because there was no showing that the testing of the biological substances would in any way alter the

---

1. In doing so, appellant may be conceding that identity was not or is not *now* an issue, as it must be under Chapter 64.

outcome of the trial, the request for DNA testing must be denied. The court also expressed some doubt that Chapter 64 allowed testing under the theory posed by appellant, stating that there is nothing in the statute that allows for testing when the sole claim is that some hypothetical third party's identity is at issue.

■ In his first point of error, appellant asserts that the denial of the requested DNA testing violates his constitutional rights under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Appellant argues that *Brady* provides an avenue for DNA testing when a petitioner can show that the testing could somehow have affected the outcome of the trial. Appellant did not present this theory to the trial court and argues it for the first time on appeal. Appellant makes no argument before this court that the testing of the biological materials would alter the outcome of the case other than to say "[a]ppellant's request for DNA testing can be granted under the Brady Doctrine because a proper showing was made." Appellant has not directed this Court to testimony in the record which establishes that "a proper showing was made," the nature of the showing, or the facts and legal arguments to support his assertion.

■ It is not sufficient that appellant raise only a general constitutional doctrine in support of his request for relief. *Rhoades v. State*, 934 S.W.2d 113, 119 (Tex.Crim.App.1996), citing *Vuong v. State*, 830 S.W.2d 929, 940 (Tex.Crim.App. 1992). It is incumbent upon appellant to cite specific legal authority and to provide legal arguments based upon that authority. *Id.* This is especially important where, as here, the relevant area of law is new or not well defined. *Id.* This Court will not make novel legal arguments for appellant. Because appellant has not provided any legal analysis to support the assertion that his constitutional rights were violated by the convicting court and because the record fails to provide any pertinent insight into this claim, appellant's first point of error is overruled.

■ In his second point of error, appellant asserts that the denial of DNA testing violates his state and federal constitutional rights under the Fourteenth Amendment's Due Process Clause and the Eighth Amendment's prohibition against cruel and unusual punishment. Appellant recites the text of the Eighth Amendment and Article 1, § 9 of the Texas Constitution, but does not argue how they apply to his case, nor does he provide this Court with any legal analysis in support of the contention that his rights were violated.

■ To brief a state constitutional issue adequately, appellant must present specific arguments and authorities supporting his contentions under the Texas Constitution. *Brooks v. State,* 990 S.W.2d 278, 288 (Tex. Crim.App.1999). Because he has failed to meet this burden, appellant's state-constitutional claim is inadequately briefed and is, therefore, overruled. With regard to appellant's claim under the Eighth Amendment, it is not sufficient that appellant cite only a general constitutional doctrine in support of his request for relief. *Rhoades,* 934 S.W.2d at 119. Appellant's claim under the Eighth Amendment is overruled.

■ In support of his claim for relief under the Fourteenth Amendment, appellant relies upon *Herrera v. Collins,* 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). Appellant asserts that, with the availability of post-conviction DNA testing, he can demonstrate the possibility of innocence by proving that someone else committed the murder of Fred Chisum. To assert a *Herrera*-type claim successfully, "the evidence presented must constitute affirmative evidence of appellant's inno-

cence. Once appellant provides such evidence, it is then appropriate to proceed with a determination of whether the appellant can prove by clear and convincing evidence that no reasonable juror would have convicted him in light of the newly discovered evidence." *Ex parte Franklin,* 72 S.W.3d 671, 678 (Tex.Crim.App.2002). Under *Herrera,* appellant "must establish his innocence of the crime by clear and convincing evidence and not just that he would be found not guilty by a subsequent jury." *Id.*

Appellant fails to meet his burden under *Herrera.* He has not argued, or presented, affirmative evidence of how the presence of a third party's DNA would exonerate appellant. The presence of another person's DNA at the crime scene will not, without more, constitute affirmative evidence of appellant's innocence. Appellant set forth only a bare assertion that the biological samples in question might belong to someone else. This is not enough. Point of error number two is overruled.

 In his third point of error, appellant asserts that the trial court erred by not granting DNA testing "in the interest of justice." Appellant argues that the initial version of Chapter 64 included a provision that allowed a motion for DNA testing if, in the interest of justice, the trial court made a finding that the results of testing may be material to a claim of innocence. While this may be true, the statutory laws of this jurisdiction are comprised of statutes that were actually passed by the legislature, not versions of bills that were discussed during the legislative process. Even if appellant's claim had merit, the trial court did not, as appellant asserts, find that the results of testing may be material to a claim of innocence. In denying appellant's motion for DNA testing, the trial court found just the opposite.

Appellant's third point of error is overruled.

In point of error four, appellant claims that the trial court erred by denying DNA testing because its ruling does not effectuate the legislative intent of the statute. In his brief, appellant asserts that "the legislative history of Chapter 64 shows that Senate Bill 3 means that anyone has a right to request a test as opposed to it being discretionary with the judges as to whether the test will be conducted or not."

 This Court's recent review of the legislative history of Chapter 64 indicates that the legislature intended to require that a convicted person demonstrate to the trial court that a reasonable probability exists that DNA tests would prove his or her innocence. *Kutzner v. State,* 75 S.W.3d 427, 438 (Tex.Crim.App.2002). This holding is contrary to appellant's assertion. While it is true that anyone may request DNA testing, by its explicit terms Chapter 64 does not require the trial court to grant that request in all cases; as appellant concedes, a court must order testing only if the statutory preconditions are met. Under *Kutzner,* appellant has failed to meet his burden. Appellant's fourth point of error is overruled.

In point of error five, appellant claims that Chapter 64 violates and denies his constitutional right to Equal Protection. Appellant argues that, under Chapter 64, a convicted person who plead guilty may submit a motion for DNA testing, but a person who chose to go to trial is not equally protected by the statute because nothing prohibits the convicting court from finding that identity was not an issue.

 Appellant misreads the statute. Chapter 64 does not guarantee a person who plead guilty the right to DNA testing; it simply prohibits a convicting court from using a guilty plea to bar access to the

filing of a motion for testing.[2] An appellant who entered a guilty plea is no more, or less, entitled to a favorable ruling on his Chapter 64 motion than one who plead not guilty. There is no equal-protection violation; the statute is simply ensuring that all defendants, no matter how they were adjudged guilty, have access to post-conviction DNA testing. Appellant's fifth point of error is overruled.

In his sixth point of error, appellant claims that he was deprived of reasonably effective assistance of counsel during the hearing on his Chapter 64 motion because counsel made a number of errors, such as failing to offer evidence supporting the motion, failing to offer the list of items containing biological material that were in the state's possession, and failing to assert adequately that identity was at issue.

 We have not decided whether an appellant may raise a claim of ineffective assistance arising from a hearing under Chapter 64, and we need not do so in this case. Assuming, *arguendo*, that such a claim may be raised, to prevail on his claims appellant must first prove, by a preponderance of the evidence, that his counsel's representation fell below the objective standard of professional norms. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Mitchell v. State,* 68 S.W.3d 640, 642 (Tex. Crim.App.2002). He must then show that this deficient performance prejudiced his defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance. *Mallett v. State,* 65 S.W.3d 59, 63 (Tex.Crim.App. 2001).

In capital murder cases, appeals from a Chapter 64 motion come directly to this Court. Tex.Code Crim. Proc. art. 64.05 (2001). Commonly, the record on a direct appeal will be inadequate to determine whether counsel's representation was so deficient and so lacking in tactical or strategic decision making as to overcome the presumption that counsel's conduct was reasonable and professional. *Mitchell,* 68 S.W.3d at 642; *Mallett,* 65 S.W.3d at 64–65.

 Here, there is nothing in the record that shows that counsel's conduct was the product of unsound or unreasonable strategy or that there is a fair probability that his conduct led to an unreliable or unjust result. The record does not show that the alleged errors had any impact on the court's ruling, nor does it show that the claimed "missing" evidence existed or even what evidence appellant wished counsel to introduce. If such evidence exists, there is nothing in the record to rebut the presumption that counsel could have reasonably determined that the potential benefit of the alleged evidence was outweighed by the risk of unfavorable counter-evidence.

 Further, there is no showing that counsel's failure to offer the list of materials in the possession of the state constituted ineffective assistance. The state concedes that the items are in its possession, and the items that appellant was requesting be tested may be identified from the record of the hearing. Even if counsel's failure to introduce the list was deficient performance, appellant has made no showing of how the error prejudiced him. *Strickland,* at 687, 104 S.Ct. 2052.

**2.** Art. 64.03(b) says "A convicted person who pleaded guilty or nolo contendere in the case may submit a motion under this chapter, and the convicting court is prohibited from finding that identity was not at issue in the case solely on the basis of that plea."

Finally, appellant asserts that counsel's performance was ineffective because counsel failed to assert adequately that identity was at issue. At the hearing, counsel argued that a third party may have been present at the crime scene and that DNA testing would help to prove this. Chapter 64 requires that identity "was or is" an issue, not that future DNA testing could raise the issue. Appellant confessed to the murder. His identity was not at issue. A vague, inarticulate assertion that counsel could have provided a better defense is not a legal basis for finding counsel constitutionally incompetent. *Bone v. State*, 77 S.W.3d 828, 836 (Tex.Crim.App. 2002). Appellant's sixth point of error is overruled.

The denial by the convicting court of appellant's motion for DNA testing pursuant to Chapter 64 is affirmed.

WOMACK, J., concurred in the result.