

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-76,835

**MARVIN LEE WILSON, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON DIRECT APPEAL FROM THE DENIAL OF DNA TESTING
FROM CAUSE NO. 63490 IN THE 252ND DISTRICT COURT
JEFFERSON COUNTY**

*Per Curiam.*

### O P I N I O N

This is a direct appeal from the denial of DNA testing pursuant to Chapter 64 of

the Texas Code of Criminal Procedure.  Appellant has also filed a motion to stay his

execution scheduled for today.  Because of the circumstances under which this appeal

comes to us, we are accelerating the appeal and issuing this opinion.

A jury found appellant guilty of the 1992 offense of capital murder.  The jury

answered the special issues submitted pursuant to Texas Code of Criminal Procedure Article 37.071, and the trial court, accordingly, set appellant's punishment at death. According to the State's theory, appellant beat, kidnapped, and then shot Jerry Williams. The State alleged that appellant kidnapped and murdered Williams in retaliation for providing the police with information that led to appellant's arrest on drug possession charges. We affirmed appellant's conviction on direct appeal. *Wilson v. State*, 7 S.W.3d 136 (Tex. Crim. App. 1999).[1] In 2001, appellant filed a motion with the trial court for DNA testing pursuant to Chapter 64 of the Texas Code of Criminal Procedure. The convicting court denied appellant's motion for DNA testing, holding that appellant failed to satisfy the requirements of Article 64.01 and Article 64.03. On appeal of that decision, this Court found that the trial court applied the correct legal standards in making its decision, and appellant failed to satisfy the requirements of Article 64.01 and Article 64.03. Accordingly, we affirmed the convicting court's ruling.

Appellant has now, less than one week before his scheduled execution, filed a second motion with the trial court for DNA testing pursuant to Chapter 64 of the Texas Code of Criminal Procedure. The convicting court denied the motion for testing and appellant's motion to stay the execution. The court held that appellant failed to show that the result of his trial would have been different. It also held that appellant could have advanced this claim long ago as opposed to advancing it on the eve of his execution.

---

[1] Appellant's first conviction for this offense was reversed. *Wilson v. State*, 938 S.W.2d 57 (1996).

## FACTS

The facts of this offense have been set out in both of appellant's direct appeals and in his previous DNA appeal. Those facts will be repeated here for ease of reading.

On November 4, 1992, police officers searched appellant's home pursuant to a search warrant. Williams was the confidential informant whose information enabled the officers to obtain the search warrant. When over 24 grams of cocaine were found in the house, police officers arrested appellant and another man present in the home at the time. Appellant was subsequently released on bond.

Sometime after the arrest, appellant allegedly told a friend, Terry Lewis, that someone had "snitched" on him, that the "snitch" was never going to have the chance to "have someone else busted," and that the appellant "was going to get him."

The evidence at trial supporting the jury's verdict showed that on November 9, 1992, the appellant acted on his threats to harm the "snitch." In a grocery store parking lot, the appellant stood over Williams and beat him. The appellant asked, "What do you want to be a snitch for? Do you know what we do to a snitch? Do you want to die right here?" In response, Williams begged for his life. At the time, Andrew Lewis, the husband of Terry Lewis, was pumping gasoline in his car at the same location. Williams escaped from the appellant long enough to run across the street to a field.

The appellant pursued Williams and caught him in the field. Andrew Lewis left the store and drove to the field where the two men were struggling. Williams was then

forced into the car by both the appellant and Andrew Lewis. At some point, Andrew Lewis also participated in the beating of Williams. The appellant asked Andrew Lewis, "Where's the gun?" The appellant told Andrew Lewis to get the gun, and that he wanted to kill Williams. The men then drove Williams towards a nearby Mobil refinery. During the altercation, one witness entered the store to call the police, but continued to watch through the plate glass windows of the store. Two of the eyewitnesses left the store and drove back to their apartments, which were close by, after the appellant, Williams, and Andrew Lewis went to the field. When the two witnesses arrived home, they heard what sounded like gunshots from the direction of the Mobil plant.

At trial, the jury heard evidence that a foreign white hair apparently from a Caucasian person was found in or near the victim's hand. This white hair was never subjected to DNA testing. But the trial record did establish that appellant, Andrew Lewis, and the victim, Williams, were all African-American, and, therefore, could not have been the source of the hair. Although it heard that the Caucasian hair was on or near the victim's body, the jury determined from the other evidence in the record that appellant caused the death of the victim. The State also kept pulled hair samples from appellant, one pair of white socks, four rounds of live ammunition, photos and VHS video of the crime scene, and swabs from Andrew Lewis's car. As he did in 2001, appellant filed a motion to have only the white hair tested pursuant to Chapter 64 of the Texas Code of Criminal Procedure.

ANALYSIS

In his first point of error, appellant asserts that the trial court erred in finding that the timing of appellant's request for testing was perilous and made to delay his execution. In his second point, he asserts that the trial court erred in finding that appellant failed to demonstrate by a preponderance of the evidence that the result of his trial would have been different if exculpatory results had been obtained through DNA testing. We shall address these points in reverse order.

Under Article 64.03(a)(2)(A)[2], DNA testing is required only if "the convicted person establishes by a preponderance of the evidence that the person would not have been convicted if exculpatory results had been obtained through DNA testing." As we noted in *Ex parte Gutierrez*, 337 S.W.3d 883, 899 (Tex. Crim. App. 2011), this means that a convicted person is not entitled to DNA testing unless he first shows that there is "greater than a 50% chance that he would not have been convicted if DNA testing provided exculpatory results[.]" We further noted that "[t]he bottom line in post-conviction DNA testing is this: Will this testing, if it shows that the biological material does not belong to the defendant, establish, by a preponderance of the evidence, that he did not commit the crime as either a principal or a party?" *Id.* at 900.

The State has already conceded that the hair found on the victim's body, for which appellant requests DNA testing, does not belong to the victim, appellant, or co-defendant

---

[2] We will assume without deciding that all of the provisions of Article 64.01 were met.

Andrew Lewis. At trial, the State admitted to the jury that the source of the foreign hair was unknown. But, the State argued that the hair was not probative of the appellant's guilt. The appellant argued that because it was not the appellant's hair, the appellant did not commit the murder. In his motion for DNA testing filed in 2001, appellant wholly failed to argue how the presence of some third party's DNA would exonerate him. This Court held in *Bell v. State* that "[t]he presence of another person's DNA at the crime scene will not, without more, constitute affirmative evidence of appellant's innocence." 90 S.W.3d 301, 306 (Tex. Crim. App. 2002).

In June 2012, the police arrested a man named Benny Frank Nettles who claimed to have evidence that another committed the murder of which appellant was convicted. A July hearing on the matter revealed that Nettles was purportedly told by a close friend named Billy Ray Joseph, who was dying of cancer, that he and Andrew Lewis committed the crime (and appellant was just present). There was no indication whether Joseph was Caucasian, African-American, or something else. In his motion for DNA testing which was filed less than a week before his scheduled execution, appellant mentions nothing about Joseph specifically, but, for the first time, asserts that either corrupt officers of the Beaumont Police Department or "persons who were arrested because of [the victim's snitching] efforts" are responsible for the victim's death, and he argues that testing of this hair will prove that one of these people killed the victim. Although he identifies several officers and others who were the target of an FBI investigation, he fails to connect any of

these persons to the instant offense by anything more than mere speculation.

At trial, the jury heard evidence that appellant beat up the victim in a store parking lot and then chased him over to a field followed by Andrew Lewis. Appellant and Lewis then forced the victim into Lewis's car and started driving toward a refinery from which direction gunshots were heard shortly thereafter. The victim's body was found the next morning. No evidence was presented regarding any other persons being at the place where the victim was ultimately killed during this time frame, and, even if someone else was present, that discovery would not lessen the evidence supporting appellant's active participation in the crime. Further, the jury heard both the State and the appellant mention the foreign hair, but still chose to convict the appellant in light of other evidence. Even if DNA testing were to be performed and the results confirmed that the hair did not belong to the appellant, the victim, or Andrew Lewis, this new evidence would not exculpate appellant. Therefore, the trial court did not err in finding that appellant failed to show by a preponderance of the evidence that the result of his trial would have been different. Point of error two is overruled.

Article 64.03(a)(2)(B) further requires that the convicted person must establish by a preponderance of the evidence that "the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice." Appellant states that Nettles's arrest in June 2012 led to the investigation which revealed the network of corrupt officers and confidential informants who could have been

responsible for the victim's murder in this case. However, appellant's own exhibits reveal that the corruption among Beaumont police officers was apparently widely known in the 1990's. Indeed, the arrests of several officers occurred in the mid-1990's, prior to appellant's filing of his first motion for DNA testing. Although a defendant seeking DNA testing no longer need show why he did not raise a claim earlier, he still must show that his claim has not been made to unreasonably delay the execution of his sentence. A motion filed less than a week before a scheduled execution, when the information upon which it is based was clearly available earlier, fails to make this showing. The trial court did not err in finding the timing of the request suspect. Appellant's first point of error is overruled.

Because appellant failed to satisfy the requirements of Chapter 64, the convicting court did not erroneously deny the appellant's motion for DNA testing. Accordingly, the ruling of the convicting court is affirmed. Appellant's motion for stay of execution is denied, and no motion for rehearing will be entertained.

Delivered: August 7, 2012
Do Not Publish