**653-15**

Cause No._____

**ORIGINAL**

## IN THE
## CRIMINAL COURT OF APPEALS

**TIMOTHY HARRIMAN,**
Appellant,

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAY 29 2015

Abel Acosta, Clerk

Vs.

**THE STATE OF TEXAS,**
Appellee.

*On Petition for Discretionary Review*
*from the Court of Appeals for the*
*Fifth District Court No. 5*
*At Dallas County, Texas*
*In Cause No. 05-13-01547-CR;*
*Trial Cause No. F94-015553-L*

FILED IN
COURT OF CRIMINAL APPEALS

MAY 29 2015

Abel Acosta, Clerk

# PETITION FOR DISCRETIONARY REVIEW

Counsel of Record:

Timothy Scott Harriman
TDCJ# 00677187
Pro Se Petitioner
2 Jester Rd, Vance Unit
Richmond, Texas 77406

*Attorney for Appellant*

i

# LIST OF PARTIES

**APPELLANT/PETITIONER**
Timothy Harriman

**APPELLEE**
The State of Texas

**DEFENSE COUNSEL AT TRIAL**
**Original Trial:**
Amy Abboud
7161 Bishop Road, Suite 200
Plano. Texas 75024

**Post-Conviction DNA Motion:**
Julie Doucet
Dallas County Public Defender's Office
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-2
Dallas, Texas 75207-4399

**STATE'S ATTORNEYS AT TRIAL**
John Vance, Linda Bayless, and Scott Bryant
Dallas County District Attorney's Office
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207-4399

**APPELLANT'S ATTORNYS ON APPEAL**
**Post-Conviction DNA Motion:**
Julie Woods
Dallas County Public Defender's Office
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-2
Dallas, Texas 75207-4399

**STATE'S ATTORNEYS ON APPEAL**
**Original Trial:**       Patricia Poppoff Noble
**Post-Conviction DNA Motion:**       Shara Saget
 Dallas County District Attorney's Office
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-19
Dallas, Texas 75207-4399

# TABLE OF CONTENTS

LIST OF PARTIES................................................ii

TABLE OF CONTENTS.............................................iii

INDEX OF AUTHORITIES..........................................iv

STATEMENT OF THE CASE..........................................1

HISTORY OF THE CASE............................................2

GROUND ONE FOR REVIEW..........................................4

GROUND TWO FOR REVIEW..........................................6

ARGUMENT.......................................................7

Point of Error 1, Restated.....................................7

> *The intermediate courts abused their discretion in denying Appellant's motion for post-conviction DNA testing because Appellant met his burden of establishing that identity was or is an issue in this case and demonstrating by a preponderance of the evidence that he would not have been convicted had the results of the DNA test been available at trial.*

Point of Error 2, Restated....................................10

> *The intermediate courts have misconstrued Chapter 64 to mandate a foreclosure on indigent defendants' rights when an important question of factual Identity arises from state and federal concerns as to actual innocence that falls within contours of scientific certainty.*

PRAYER........................................................14

CERTIFICATE OF SERVICE........................................14

CERTIFICATE OF COMPLIANCE.....................................15

# INDEX OF AUTHORITIES

**Cases**                                                                            **Page**

*Harriman v. State,*
No. 05-94-00905-CR, 1995 Tex. App. LEXIS 2556 (Tex. App.- Dallas Oct. 12, 1995, no pet.)..........................................................................................1

*Bell v. State,* 90 S.W.3d 301, 306 (Tex. Crim. App. 2002)...........................passim

*Ex Parte Gutierrez,* 337 S.W.3d 883 (Tex. Crim. App. 2011).....................passim

*Blacklock v. State,* 235 S.W.3d 231, 233 (Tex. Crim. App. 2007)........................5

*Esparza v. State,* 282 S.W.3d 913, 922 (Tex. Crim. App. 2009)..........................5

*Peyravi v. State,*
___ S.W.3d ___ (Tex. App.—Houston [14th Dist.] 2013, no pet.)
(No.14-13-00118-CR; 11-7-3.).............................................................................5

*Skinner v. Switzer,* 131 S.Ct. 1289, 1296, 179 L.Ed.2d 233 (2011).....................6

*State v. Swearingen,* 424 S.W.3d 32, 37-38 (Tex. Crim. App. 2014).....................6

*Routier v. State,* 89 S.W.3d 55 (Tex. Crim. App. 2008).......................................7

*Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781 (1979)...........................10

*Ex Parte Robbins,* 360 S.W.3d 446, 457 (Tex. Crim. App. 2011)........................11

*In Re Franklin,* 337 S.W.3d 890, 892 (Tex. Crim. App. 2008)............................12

*Gonzales v. State,* 4 S.W.3d 406, 412 (Tex. App.-Waco 1999)...........................12

**Statutes**

TEX. CODE CRIM. PROC. Art. 64.03(a)..........................................................2

TEX. CODE CRIM. PROC. Art. 64.03(a)(2)(A)................................................2

TEX. CODE CRIM. PROC. Art. 64.03(a)(1)(B)................................................4

**Miscellaneous**

Texas Code of Criminal Procedure, article 11.073..............................................6

HOW DNA Evidence Works, http://science.howitorks.com/life/genetic/dna-evidence.htm (last visited September 26, 2014)..........................................12

**TO THE HONORABLE COURT OF CRIMINAL APPEALS:**

**COMES NOW;** Appellant/Petitioner, Timothy Harriman, and submits this Petition for Discretionary Review from the denial of a motion for post-conviction DNA testing in Criminal District Court No. 5 of Dallas County, Texas, the Honorable Carter Thompson, Judge presiding.

## STATEMENT OF THE CASE

A jury convicted Petitioner of murder and sentenced him to thirty-four years' imprisonment in the Texas Department of Criminal Justice. (CR: 5-8). Petitioner appealed, and the Fifth District Court of Appeals affirmed his conviction on October 12, 1995. *See Harriman v. State,* No. 05-94-00905-CR, 1995 Tex. App. LEXIS 2556 (Tex. App.-Dallas Oct. 12, 1995, no pet.).

On August 15, 2012, Petitioner filed a motion for post-conviction forensic DNA testing pursuant to Chapter 64 of the Texas Code of Criminal Procedure. (CR: 17-26). On September 25, 2013, the State filed a response to Petitioner's motion. (CR: 47-67). In its response, the State identified two pieces of evidence that have been retained in this case: (1) head hair standard and (2) hairs from hands. (CR: 47-67). The State argued in its response that "Appellant's motion should be denied because identity 'was not and is not an issue' in this case and Petitioner failed to show that he 'would have' not

1

been convicted if exculpatory results had been obtained through DNA testing." (CR: 51-52).

On October 12, 2013, and without a hearing, the trial court entered an order denying Petitioner's motion for post-conviction DNA testing. (CR: 68-69). The court found that identity was not and is not an issue in this case and that Petitioner has not established by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing as required by Article 64.03(a)(2)(A) of the Texas Code of Criminal Procedure. (CR; 68-69); TEX. CODE CRIM. PROC. Art. 64.03(a)(2)(A). Appellant timely filed his notice of appeal. (CR: 72-75).

## HISTORY OF THE CASE

Petitioner was convicted of first degree murder based upon an uncorroborated statement and/or confession, and sentenced to thirty-four years' confinement. The trial court entered a deadly weapon finding on the same, absent any factual findings of harm or injury required. The Fifth District Court of Appeals affirmed his conviction on grounds of "mere probable cause" alone. *See Harriman v. State,* No. 05-94-00905-CR, 1995 Tex. App. LEXIS 2556 (Tex. App.- Dallas Oct. 12,1995, no pet.).

On or about February, 2012, applicant filed an original motion for post-conviction forensic DNA testing pursuant to Chapter 64 of the Texas

2

Code of Criminal Procedure. The convicting court ignored the motion. On August 15, 2012, Appellant filed his "second" motion for post-conviction forensic DNA testing pursuant to Chapter 64 of the Texas Code of Criminal Procedure.[1] (CR: 17-26). Again, the court ignored the request in violation of due process.

Notwithstanding, on February 12, 013, defendant was compelled to file his Pro Se motion pursuant to the Texas Rules of Appellate Procedure, rule 52.1 under mandamus relief. On February 22, 2013, the intermediate court of appeals ordered the State to respond. On March 7, 2013, the State argued and attached (1) the trial court's order directing the state to bring forth the DNA evidence, if any, signed on March 1, 2013, and (2) a motion annexed for extension of time.

On May 4, 2015, the court of appeals handed down an opinion affirming the trial court's order denying the request for DNA Testing on the sole basis that the record shows that Petitioner admitted to conduct that is unsupported by [any] evidence outside of the rule of *Corpus Delicti*.(citing *Bell v. State,* 90 S.W.3d 301, 306 (Tex. Crim. App. 2002) ( *See Appx. 2*).

---

[1] See Appx. 1.

## GROUND ONE

*The intermediate courts abused their discretion in denying Appellant's motion for post-conviction DNA testing because Appellant met his burden of establishing that identity was or is an issue in this case and demonstrating by a preponderance of the evidence that he would not have been convicted had the results of the DNA test been available at trial.*

The intermediate courts abused their discretion in denying Petitioner's motion for post-conviction DNA testing because Petitioner has met his burden under Chapter 64 of the Texas Code of Criminal Procedure by establishing that identity was or is an issue in this case and that he would not have been convicted if exculpatory results had been obtained through DNA testing at the time of his trial. The trial court's explicit finding that identity was not and is not an issue in this case is not supported by the trial record which contains evidence that (1) a third person may have been responsible for the victim's death, (2) a probability of causing death is not sufficient absent harm and/or injury not shown outside of the defendant's statement, and (3) newer testing techniques would show such probabilities are unreliable and exculpatory results can be obtained. TEX. CODE CRIM. PROC. Art. 64.03 (a)(1)(B).

4

In light of the trial testimony and that the only medical examiner could not determine the cause and manner of the victim's death, evidence of a third person's DNA on the victim or the fact that the alleged victim could have died from other means, establishes by a preponderance of the evidence that Petitioner would not have been convicted had the DNA test results been available at trial. Admitted conduct, without more, cannot stand as sufficient to constitute affirmative evidence of appellant's guilt as to the underlying offense of murder. *Ex Parte Gutierrez*, 337 S.W.3d 883, 893-94 (Tex. Crim. App. 2011).

The statutes language and legislative history is very clear that a defendant can make identity an issue whether or not there is an accuser, or whether the defendant pled guilty.[2] *See Blacklock v. State*, 235 S.W.3d 231, 233 (Tex. Crim. App. 2007); *Esparza v. State*, 282 S.W.3d 913, 922 (Tex. Crim. App. 2009). It should follow that when a defendant makes an extra-judicial statement that is uncorroborated, the question of identity will always be open for inquiry thereto. *Blacklock*, 235 S.W.3d at 233, (indicating that under "some" circumstances, a witnesses statement maybe irrelevant to constitute Identity issues).

---

[2] The purpose of such DNA testing is to provide an avenue by which a defendant may seek to establish innocence and exclude himself as the perpetrator of the alleged offense. *Peyravi v. State*, ___ S.W.3d ___ (Tex. App.—Houston [14th Dist.] 2013, no pet.)(No. 14-13-00118-CR; 11-7-13).

## GROUND TWO

*The intermediate courts have misconstrued Chapter 64 to mandate a foreclosure on indigent defendants' rights when an important question of factual Identity arises from state and federal concerns as to actual innocence that falls within contours of scientific certainty.*

Under Texas law, the Legislature's amendments towards Chapter 64's advancements in reviewing such cases, as lies here, are not fully explained when considering "other methods" for determining the existence of DNA related biological evidence. Hence, the appellate court has decided an important question of state and/or federal law in a way that directly conflicts with legislative intent, applicable decisions, and should be settled by this Honorable Criminal Court of Appeals. It remains unconstitutional to continue to deprive an innocent person, whether indigent or not, the opportunity to resolve prior conflicts. *See Skinner v. Switzer*, 131 S.Ct. 1289, 1296, 179 L.Ed.2d 233 (2011)(noting that, as unconstitutional, Texas courts have construed the statute under DNA testing, to completely foreclose any prisoner who could have sought DNA testing...); *e.g. State v. Swearingen*, 424 S.W.3d 32, 37-38 (Tex. Crim. App. 2014); TEX. CODE CRIM. PROC. Art. 64.03(a)(1)(B) *See also S.B. 344, Texas Code of Criminal Procedure, article 11.073.*

6

## ARGUMENT(S)

**Point of Error 1, Restated:**

*The intermediate courts abused their discretion in denying Appellant's motion for post-conviction DNA testing because Appellant met his burden of establishing that identity was or is an issue in this case and demonstrating by a preponderance of the evidence that he would not have been convicted had the results of the DNA test been available at trial.*

## Standard of Review

Courts review a trial court's ruling on a post-conviction motion for DNA testing under a bifurcated standard of review. *Rivera v. State,* 89 S.W.3d 55, 59 (Tex.Crim.App. 2002). The appellate court will give almost total deference to the trial court's determination of issues of historical fact and application-of-law-to-fact issues that turn on credibility and demeanor and will review other application-of-law-to-fact issues *de novo. Routier v. State,* 273 S.W.3d 241, 246 (Tex.Crim.App. 2008). When the trial court rules on a motion for DNA testing without a hearing, courts review the ruling *de novo. Smith v. State,* 165 S.W.3d 361, 363 (Tex.Crim.App. 2005); *see also Martinez v. State,* No. 05-11-00329-CR, Tex. App. LEXIS 1970, *6 (Tex. App.-Dallas march 13, 2012, pet. ref'd) (not designated for publication). For purposes of review, the appellate court must assume that

the results of the DNA testing to which Appellant is entitled under Chapter 64 would be favorable to Petitioner. *Routier*, 273 S.W.3d at 257.

**The trial court and appellate court's conclusion that identity was not and is not an issue in this case is not supported by evidence in the trial court record.**

This Court has noted that, "The presence of another person's DNA at the crime scene will not, 'without more,' constitute affirmative evidence of... innocence." (citing *Bell v. State,* 90 S.W.3d 301, 306 (Tex.Crim.App.2002). In this Court's decision, the evidence of guilt was over-whelming of the defendant's guilt. *Id.* However, unlike this Court's decision found in the above, and in *Dinkins v. State,* 84 S.W.3d 639, 642 Tex.Crim.App.2002), the intermediate court(s) cannot say with reasonable certainty that the trial court found evidence of guilt that bears out constitutional concerns towards innocence. The bone of contention in the instant case is that a criminal agent [necessary] is wholly absent outside of the defendant's statement. *Blacklock,* 235 S.W.3d at 233 (Indicating that under "some" circumstances, a witnesses statement maybe irrelevant to constitute Identity issues).

Detective Carollo conceded during trial, that Petitioner's statement to police did not specifically admit that he killed the victim. (RR3: 235). Detective Carollo testified that when he spoke with Petitioner about the

8

offense, Petitioner told him that Vanlandingham (the decedent) routinely purchased cocaine from a drug dealer named Carlos who lived in the same apartment complex. (RR3: 231). When the detective asked Petitioner if he knew of anyone who wanted to kill the victim, Petitioner said that the victim owed Carlos a lot of money for the cocaine and that Carlos could be involved in the murder. (RR3: 231-32). Additionally, neighbors, including Carlos, partied with the victim inside Petitioner's apartment on the date of the offense. (RR4: 15-17). Trial testimony also established that the victim had been in a relationship with Carlos's cousin Marvin. (RR3: 227; State's Exhibit 24). On the date of the offense, Petitioner walked into his apartment and saw the victim and Marvin in a physically intimate scenario. (RR4: 18-19). The evidence at trial established that many other people had access to the apartment and the victim on the day of his death. Nothing in the record, outside of the principle of *corpus delicti* points or brings forth the upshot of identity of the defendant. Moreover, this Court is to believe that the defendant somehow has stealthily overcame the demand for cause and result.[3]

---

[3] **Cause: n.13(c) Something** that produces an effect or result<the cause of the accident>It has been said that an act in which no way contributed to the result in question cannot be the cause of it; but this, of course, does not mean that an event which "might" have happened in the same way though the defendant's act or omission had not occurred is not the result of it. The question is not what would have happened, but rather what did happen. (citing) Joseph H. Beale, The Proximate Consequencer of an Act, 33 Harv.L.Rev. 633, 638(1920).

Here, the appellate court's ruling under the term "probability," leaves room for an appealable decision. The question of [without more] cannot be answered absent precise scientific certainty within the realm of newer testing techniques now available. Therefore, it would be, but for an abuse of discretion, for the trial court and the appellate court to deprive, prohibit, or foreclose on a defendant's entitlement to reach or engage the (more) explicit standard of exculpatory evidence otherwise necessary under an independent collateral inquiry into the validity of murder. *Ex Parte Gutierrez,* 337 S.W.3d at 893-94.

**Point of Error 2, Restated:**

> *The intermediate courts have misconstrued Chapter 64 to mandate a foreclosure on indigent defendants' rights when an important question of factual Identity arises from state and federal concerns as to actual innocence that falls within contours of scientific certainty.*

Under Texas Law, as well as federal law, the courts must consider whether the jury could rely on facts that turn on sound and reasonable scientific evidence in analyzing whether the credibility of a witness may be regarded as fact. *Ex Parte Brooks,* 219 S.W.3d 396, 401 (Tex.Crim.App.2007); *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781

(1979) (discussing the standards of review under reasonable credibility of witness(s)). *See also Ex Parte Robbins,* 360 S.W.3d 446, 457 (Tex.Crim.App.2011) (involving due course and due process violations that rendered his trial unfair and unconstitutional...).

**The trial court failed to consider evidence in the trial record indicating that favorable results from DNA testing of the hairs and additional fingerprint DNA related evidence would corroborate a defense theory and could have tipped the jury's verdict in Defendant's favor.**

The appellate court's assertion that biological evidence of a third person in Vanlandingham's hand would "only muddy the waters" is not supported by the record. (CR: 51). The state courts cannot know if there was DNA evidence from a third person on the victim's hand, or whether Petitioner could be excluded as a donor because the hairs collected and/or the fingerprint analysis submitted to SWIFS were never fully tested or identified for DNA. Indeed, this is the purpose of post-conviction DNA testing. TEX. CODE CRIM. PROC. art. 64.01(b)(2)(A).

Under Texas law, the trial court must consider reliable facts and sound medical evidence in lieu of statements that were (or should have been) inadmissible at trial. *Ex Parte Gutierrez,* 337 S.W.3d at 893-94; *Dansby v. State,* 960 S.W.2d 668(Tex.App.-Tyler 997)(Harm was shown from improper admission of the defendant's unrecorded oral confession where the

11

statement contradicted his position at trial, the State emphasized the improper evidence, ...). It is apparent from the record that the appellate court would otherwise suggest that, "even if" exculpatory evidence could be identified, this fact would not prove innocence or guilt.[4] Again, the court rests its decision on the defendant's uncorroborated confession. This clearly conflicts with prior applicable decisions of appellate courts and this Court's precedent. *i.e. Gonzales v. State,* 4 S.W.3d 406, 412 (Tex.App.-Waco 1999)(A defendant's extra-judicial confession standing alone, is not sufficient to support a conviction; there must be other evidence independent of the confession that tends to prove the *corpus delicti*)(citing *Williams v. State,* 958 S.W.2d 186, 190 (Tex. Crim. App. 1997)).

Therefore, the intermediate courts have misconstrued Chapter 64 to essentially foreclose on a defendant's entitlement to have the testing done when he is seeking out the validity of the instant conviction.[5] *In Re Franklin,* 2008, LEXIS 4545, 2008 WL 2468712 (337 S.W.3d 890, 892 Tex. Crim. App. 2008)(reasonable grounds exist for a testing motion are present when the facts stated in the request for counsel or otherwise known to the convict-

---

[4] Appx. 2 at Pp 4.

[5] *How DNA Evidence Works,* http://science.howitworks.com/life/genetic/dna-evidence.htm (last visited September 26, 2014).

ing court reasonably suggests a plausible argument for testing can be made. Conversely, reasonable grounds for testing are not present if the record before the court shows that DNA testing is impossible or that no viable argument for testing can be made).

The fact that Petitioner suggested to choking the victim does not mean he killed the victim, especially in light of the evidence of the victim's drug and alcohol use, and absence of harm or injury done. Consequently, the trial record did not establish that Petitioner was the person who caused the victim's death. Tangible probative evidence collected from the crime scene includes, but not limited to, fingerprints from a tray in the apartment's bathroom. (RR3: 208-12). These fingerprints did not belong to Petitioner or the victim. (RR3: 211-12). The Physical Evidence Detective did not collect any evidence from [any of] the areas where the victim's deceased body had been inside the apartment. (RR3: 208-12). Consequently, the biological material retrieved from the victim's hand, scientific information, and additional biological evidence collected during the autopsy would be vital in establishing who was near the victim and/or caused his death.

If a third person's DNA were found on Vanlandingham, this information would certainly be exculpatory. It supports Petitioner's defense that another person could be responsible for the victim's death. Evidence

13

that a third person's biological material was on the victim at the time of his death would most certainly establish that a third person, not Petitioner, was near the victim at the time of his death. Vanlandingham had a criminal record, was a drug user, and owed money to his drug dealer. (RR3: 136-37; RR4: 15-17). If testing shows that the DNA is from a third person and not Petitioner, this information would constitute objective corroboration of Appellant's defensive theory that the victim could have been killed by another person with a motive. Whether DNA of a third person was on the victim would be significant in the jury's evaluation of the defensive theory presented at trial.

Furthermore, because this case involves an absence of injury and/or harm done within the essential meaning of [caus]ation, and does more than clearly diminish the credibility of either an uncorroborated statement or extra-judicial confession, nor will it support a hypothetical conclusion under any Texas Rules or Law applied, the intermediate courts have erred in concluding that exculpatory evidence would "only muddy the waters." *Bell*, 90 S.W.3d at 306.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Petitioner prays that

this Court reverse the appellate and trial court's order denying Petitioner's

motion for post-conviction DNA testing.

Respectfully submitted

_/s/ Timothy Scott Harriman_
(    Signature of Pro Se Petitioner    )
Timothy Scott Harriman
TDCJ# 677187
2 Jester Road, Carol Vance Unit
Richmond, Texas 77406

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing petition was served on the Clerk of the Texas Court of Criminal Appeals, Supreme Court Bldg., P.O. Box 12308, Austin, Texas 78711, and the Dallas County Criminal District Attorney's Office (Appellate Division), 133 N. Riverfront Blvd., 10th Floor, Dallas, Texas 75207, by placing this document in the United States Postal Service on May 23, 2015.

_/s/ Timothy Scott Harriman_
Timothy Scott Harriman

## CERTIFICATE OF COMPLIANCE

I hereby certify that this petition for discretionary review, exclusive of appendices, is 3,713 words in length, according to Microsoft Office, which was used to prepare this petition and complies with the word-count limit and typeface conventions required by the Texas Rules of Appellate Procedure.

_/s/ Timothy Scott Harriman_
Timothy Scott Harriman

# APPENDIX    1

| TIMOTHY SCOTT HARRIMAN, | § | IN THE TEXAS COURT |
| Applicant, | § | |
| | § | OF |
| v. | § | |
| | § | |
| THE STATE OF TEXAS | § | CRIMINAL APPEALS |



## MOTION FOR FORENSIC D.N.A. TESTING:  ART. 64.01

Applicant, Timothy Scott Harriman appearing Pro Se in the above styled and numbered cause of action, respectfully requests this Honorable Court to consider the requested material, specifically, D.N.A. subject matter consisting of, but not limited to, DNA FINGERPRINTING; DNA analysis, i.e. skin, blood, hair, fingerprinting on skin, and subsequent testing as to inquiry of facts consistent with Penal Code §6.04 and TRE 702.

For the purposes listed herein, and pursuant to Vernon's Ann. Texas C.C.P. art. 64.03(a)(2)(A), the applicant would respectfully show, "but for " causation must be clearly established, other than a hypothetical capability of causing death or serious bodily injury, between the accused' conduct and the [r]esulting harm, *Wooten v. State, 267 S.W.3d 289( 2010)* thus, herein, constituting a reasonable probability clearly exists that had this information and forensic testing been made available to the trier-of-fact, if proven true, would be clear and convincing so as to undermine confidence in the outcome of the defendant's trial. See *Ray v. State, 897 S.W.2d 333(Tex.Crim.App.1995); Johnston v. State, 115 SS.W.3d 761,764(Tex.Crim.App. -Austin 2003).*

Because the courts require more than mere probability or omission of factual evidence to sustain a conviction; i.e. superficial bruising to the skin only, this finding cannot divorce the "cardinal findings" as alleged in the defendant's indictment, (to wit: strangulation of the neck with hands being a deadly weapon). Such allegations must be supported by evidence directly related to the allegation(s) made.

1

This standard is brightlined in the Supreme Court's precedents spelled out in *Jackson v. Virginia, 443 U.S 307,318-319(1979)* (Under this test, we permit juries to draw multiple reasonable inferences, as long as each inference is supported by the evidence presented at trial. However, juries are not permitted to come to conclusions based on "mere speculation or factually unsupported inferences or presumptions." To correctly apply ... this standard, it is vital that the courts of appeals understand the difference between a reasonable inference supported by the evidence at trial, speculation, and a presumption...).

Likewise, because the State and the Court of Appeals solely relied upon an improper result, due to no fault of the defendant's, based on speculation unsupported by facts ("bruising could have been obscured by the discoloration of the skin") when forensic testing factually relies upon other evidence necessary to prove an ultimate fact in existence, i.e. petechial hemorrhaging in the eyes; bruising to neck strap muscles; contusions to nose and mouth; congestion in respiratory system; 70% blockage of coronary artery, ect...) all of which would indeed constitute such allegations set out in the indictment.

However, because counsel never exercised or demonstrated a tactical or strategic decision towards adversarial testing of the facts consistent with such a case as this, when such basic and essential elements of the alleged crime must be supported by facts found under TRE Rule 702.

To the contrary, this requirement is so basic to the principle of the defendant's due process so as to preclude prejudice. With respect to effective counsel and under these precise circumstances, the *Ake v. Oklahoma, 470 U.S. 68, 76, 105 S.Ct. 1087, 1092(1985)* Court spoke in terms of the "basic tools of an adequate defense" in concluding that in certain circumstances (such as this) a defense expert is such the element necessarily required. *Rey, at 345; Ake, at 83, 105 S.Ct. at 1096.*

Therefore, because the defendant was prejudiced to a vital and critical defense function, being fundamental in nature and the State has suppressed such information and vital evidence herein requested, and the result was adverse to the defendant's due process, the Applicant now

2

presents facts sufficient by a preponderance of the evidence, that this evidence was either suppressed by the State and/or his counsel never investigated the essential facts as to the scientific evidence necessary to corroborate an alleged confession nonetheless. See *State's Findings of Fact, at 27-29, W94—01553-L(A); Affidavit, at 6,* ("I do not recall consulting [any] experts regarding the cause of death and autopsy findings.").

## STATEMENT OF FACTS

This case arises from an unlawful interrogation in violation of *Texas Code 38.22 §3, Vernon's Ann. C.C.P. penal code §37.09,* when the defendant is to agree with an unreasonable "what if" or "how do you think it could have happened" hypothesis not reasoned upon the facts while constructing a "fraudulent misrepresentation" of evidence against the accused. See *State's Findings of Fact, at 12, W94-01553-L(A)*(The Court finds [no] evidence that an audio or visual recording was made of applicant's statement."). Nonetheless, this alleged statement was admitted into evidence, but for an abuse of the Court's discretion, was wholly misleading to the jury and the defendant. This statutory violation prejudiced the defendant under his due process entitlement altogether. See <u>*Dansby v. State, 960 S.W. 2d 668(Tex.App.-Tyler 1997)*</u> (harm was shown from the improper admission of the defendant's unrecorded oral confession where the statement contradicted his position at trial, the State emphasized the improper evidence, and a finding of harmless error would [en]courage repetition).

Additionally, the State knowingly suppressed vital information and facts that would exculpate the defendant, specifically, body hair, (that were not suitable but may now be reached) air and/or skin under nails; lung weight consistent with drug and/or alcohol induced cardiac arrest; toxicology of alcohol-blood related findings that are not consistent with sole decomposition; and petechial hemorrhages specifically associated with strangulation and/or asphyxia.

3

Accordingly, when the cause of death and manner of death is found to be undetermined, and no trauma or injury is found true only three days after death has occurred, in these cases the death certificate may be signed off as "undetermined," though the cause may be equally attributed to "lethal cardiac arrhythmia," as this condition cannot be detected after death on postmortem. However, where this option is taken, the manner of death [must] be declared as natural. e.g. *Smith v. State, Tex.App.- 10th Dist.2008/20008 WL 553558 unreported)*.

Perhaps, under similar circumstances as lies here, an accused is to agree to believing, by giving a statement contrary to evidence already known, leaving an insufficient probability that he shot someone, police find deceased without injury or cause of death, yet the law may promote prosecution of the accused nevertheless, would precisely violate his due process entitlement altogether. See *Lynum v. Illinois, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed 2d 92 (1963)*.

The threshold question here is, was the factual cause of death reached under *FRE 702*, is easily answered when the defendant was precluded, by no fault of his own, to an adversarial testing of the facts sufficient to overcome the unconstitutional burden of proof when the defendant is required to prove otherwise. *In Re Winship, 397 U.S. 358 (1970)*. In the practice of law applicable here, the applicant invokes his actual innocence joined with the constitutional violation(s) therein, meaning that he is factually innocent of the underlying offense of murder in the first degree, specifically here, the facts have not changed. Under the reasonableness standard, a person of reason would conclude that if a finding adverse to one's interest may promote harm, he could seek a second or even a third opinion. However, within this case, it has not been yet reasoned within the interests of justice.

WHEREFORE PREMESIS CONSIDERED, this provision of Chapter 64, is to give applicant "full access" to the courts, and to provide a check of the integrity on the prior individual decision(s) of the trial court and the court of appeals. *House Research Org., Bill Analysis Tex.S.B.3 at 8, 77th Leg., R.S. (March 21, 2001); Kutzner v. State, 75 .W.3d 427, 433, 435(Tex.Crim.App.2002).*

4

Accordingly, there exists a reasonable probability that if the evidence to be tested results adversely towards a substantial showing of causation, it would indeed constitute a factual innocence finding. Although a finding being inconclusive may render neither a finding for or against the defendant, he may rely upon other facts to be tested and relied upon for conclusiveness under DNA fingerprinting material to be essential element of the alleged offense.

Therefore, the precise evidence, being DNA in nature, to be tested is as follows:

(1) Hair sample subject matter;

(2) Blood samples, including toxicology samples within the context of alcohol-blood concentration and symptoms being lethal levels at the time of death, as opposed to time of examination;

(3) Toxicology as to a probability to existent drug concentration, specifically , cocaine;

(4) Forensic inquiry under DNA fingerprinting in context to abnormalities that affect activity of the cardiac muscles;

(5) DNA fingerprinting as to precise toxicology results indicating the specific probability of blood-alcohol level at time of death, as opposed to present level of 0.17% to 0.20%;

(6) DNA fingerprinting as to evidence of facts consistent with harm or injury to alleged victim, including finger-nail clippings signifying struggle;

(7) DNA fingerprinting showing cardinal findings of either asphyxia or strangulation, within the context of, but not limited to, blockage of coronary arteries, contusion of mouth and nose, petechial hemorrhaging of eyes;

(8) Factual conclusions of DNA fingerprinting and injury results listed; and

(9) Death certificate showing all indications and legal basis.

Because applicant has demonstrated that, but for a reasonable probability, he would not have been convicted of murder under either an cumulative error doctrine, and/or a structural error all the same, if proven true, the exculpatory results had been obtained through discovery or further inquiry and additional testing necessary to the essential element to the crime, the Court should find that pursuant to Art. 64.04, the Movant "is entitled" to discovery when considered

with the record in this case that would promote an imperative fundamental principle in comity, and finality in the interests of justice required. e.g. _Smith v. State, 165 S.W.3d 361(Tex.Crim.App.2005)._

Accordingly, Movant need not prove his actual innocence (a principle under habeas law) in order to meet his burden to have the testing done. He need only show that the evidence requested may be re-evaluated and/or tested with [new]er testing techniques. _Vernon's Ann.Tex.C.C.P. art 64.01(b)(1)(A),(B)._

With premises considered, this Court has jurisdiction under Senate Bill 3, and may make the appropriate rendering in favor of such request when applicant, Timothy Scott Harriman, is in fact indigent and unable to compensate such expenses, with respect to his present conviction of murder in the first degree. _In Re Rogers, 53 S.W.3d 778 (Tex.App. - 2 Dist. 2001)._

Respectfully submitted,

(Signature of Applicant/Pro Se)
Timothy Scott Harriman, 677187
1391 FM 338, Beto Unit
Tennessee Colony, Texas 75880

## CERTIFICATE OF SERVICE

I hereby certify hat a true and correct copy of the aforegoing motion has been served upon the District Clerk: Gary Fitzsimmons, 133 N. Riverfront Blvd., LB-12, Dallas, Texas 75297; to be processed and transmitted to all party's of interest, by placing this document, with affidavit annexed, in the United States mail, via prison mail system effective: August 10, 2012.

Timothy Scott Harriman, 677187

FILED
12 AUG 15 AM 10:39

6

# AFFIDAVIT

**TIMOTHY SCOTT HARRIMAN**  §

**V.**  §

**STATE OF TEXAS**  §
**County of Dallas**

I, TIMOTHY SCOTT HARRIMAN, being of sound mind and being over the age of eighteen, herein, make the following statement of facts that are true and correct, and are based upon personal knowledge of the same, am competent to make the following affidavit:

On the night of September 16, 1993, I was already under the influence of alcohol and drugs due to the state of depression, during the past here years, I had been experiencing what is called black-outs, however, at the time, I didn't even know the symptoms or terminology. On this particular night in question, I had experienced this precise symptom, which resulted in poor decision making nonetheless.

When I woke the following morning, I discovered George (the alleged victim) lying on the floor covered in his sheet, as he had done prior during sleep. I called his name because it was time to go to work. However, he did not respond; although, I noticed his toes moving as if he were jut ignoring me. After several attempts to get his attention, I arose to heck on him. When I touched his shoulder, I noticed the coldness of his skin, which coincidently, brought a rush of shock and fear, mainly due to what the circumstances entailed, (several people being with him doing drugs that I was not aware of...) and my past paranoia and negativity.

Nonetheless, I failed to make the appropriate decision and call police altering what I discovered, which brings forth unreasonable decisions forthwith. Admittedly, upon being arrested and placed in custodial interrogation(s), I reasonably still desired to help or aide police in their investigations, possibly finding out what truly happened to George. However, applying hindsight, I have discovered this as clearly not the case here.

7

Although, the record will indicate that I gave an affidavit in my on hand-writing, that wasn't sufficient for a conviction, mainly because of how George was found. Thus, I was subjected to agree to "what if" or "how do you think it might have happened" hypothesis, which has resulted in incredible and uncorroborated events that cannot be reasoned under scientific explanation(s). Since I could not recall specific events of the night in question, police took a vindictive turn, and reasoned that I was holding something back. Nevertheless, this statement was taken in violation of State statute code being without the administrative protection of the very letter of Art. 38.22.

Further, my counsel solely relied upon the prosecutions file and brief discussions with myself, indicating only a formality, knowing the circumstances after the fact are not, and cannot constitute murder as alleged. Consequently, only hours before trial ended in guilt phase, my counsel asked me if I "would like for her to compel an expert to attest to the fact that if someone strangled or asphyxiated, they would know this beyond a reasonable doubt, and to bring in court documents establishing such," to which I agreed, yet I wondered why she had not already prepared for this essential information in which to aide the jury in their determinations.

Nonetheless, counsel came back with absolutely nothing, nor an explanation as to why she came back empty handed and then insisted for me to take the stand when it was contrary to my position during trial.

To the contrary, prosecution did not aide the jury nor did my counsel. Specifically, the probate force and essential element to the crime was withheld from the jury along with myself not made known of the facts to which I now request. The forensic testing is imperative to all in the interests of justice so required.

I, TIMOTHY SCOTT HARRIMAN, being presently incarcerated at Beto Unit, TDCJ-ID, declare under penalty of perjury that the facts stated herein, are true and correct and are based upon personal knowledge of the same.

Timothy Scott Harriman, 677187

8

# APPENDIX 2

AFFIRMED; Opinion Filed May 4, 2015.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01547-CR

## TIMOTHY SCOTT HARRIMAN, Appellant
## V.
## THE STATE OF TEXAS, Appellee

### On Appeal from the Criminal District Court No. 5
### Dallas County, Texas
### Trial Court Cause No. F94-01553-ML

# MEMORANDUM OPINION
Before Justices Francis, Evans, and Stoddart
Opinion by Justice Evans

Timothy Scott Harriman appeals from the trial court's denial of his post-conviction motion for DNA testing. In a single issue, appellant contends the trial court erred in denying his motion because he met his burden to show the statutory prerequisites for testing. We affirm the trial court's order.

### FACTUAL BACKGROUND

Appellant was convicted of murder and sentenced to thirty-four years' confinement. We affirmed the conviction in *Harriman v. State*, No. 05-94-00905-CR, 1995 WL 635032 (Tex. App.—Dallas Oct. 12, 1995, no pet.). The evidence presented at trial included a signed voluntary statement by appellant. According to appellant's statement, on the evening of September 16, 1993, he and his roommate, George Vanlandingham, were in their apartment along with several neighbors. Vanlandingham purchased cocaine from a neighbor named Carlos

as well as beer for the group. Appellant stated he became angry with Vanlandingham for spending money on beer and cocaine because he owed appellant $100 in rent. Appellant left the apartment and, when he returned, Vanlandingham was alone. Appellant said he and Vanlandingham began to argue about the rent money and appellant grabbed him by the throat and squeezed until Vanlandingham "went limp and fell to the ground." Appellant stated he thought Vanlandingham was only unconscious because he felt a pulse, so he moved Vanlandingham to the area of the apartment where he slept and covered him with a sheet.

The following morning, appellant realized Vanlandingham was dead. Appellant did not call the police because he was afraid they would think he intended to kill Vanlandingham. Instead, he wrapped the body in a sheet and put him in a closet. The next day, appellant left to stay at a friend's. Vanlandingham's body was discovered two days later by an apartment complex maintenance worker. Appellant was indicted and convicted for causing Vanlandingham's death by strangling him.

On August 15, 2012, appellant filed a motion for post-conviction DNA testing pursuant to chapter 64 of the Texas Code of Criminal Procedure. The State responded that it had retained two pieces of biological evidence in the case but argued the request for testing should be denied because the identity of the person who committed the offense was not at issue in the case and the results could not prove appellant's innocence. The trial court denied appellant's motion without a hearing finding that identity was not an issue and there was no showing that appellant would not have been convicted even if DNA testing had shown the biological material did not belong to him. Appellant now brings this appeal of the trial court's denial of his motion.

ANALYSIS

Chapter 64 of the code of criminal procedure governs a convicted person's request for post-conviction forensic DNA testing and contains multiple threshold requirements that must be met before a movant is entitled to such testing. Appellant bears the burden of meeting all statutory predicates. *See Routier v. State*, 273 S.W.3d 241, 246 (Tex. Crim. App. 2008). When a trial court rules on a motion for DNA testing without conducting a hearing, we review the court's ruling *de novo*. *See Smith v. State*, 165 S.W.3d 361, 363 (Tex. Crim. App. 2005). We must assume for purposes of our review that the results of the DNA testing would be favorable to appellant. *See Routier*, 273 S.W.3d at 257.

Among the requirements for testing under Chapter 64, a movant must show that identity was an issue in the case. TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1)(B) (West Supp. 2014) Appellant contends identity was an issue here because he testified at trial that Vanlandingham still had a pulse after he choked him and many other people had access to the apartment and the victim on the date of the offense. Appellant was indicted and convicted, however, on the basis that his admitted strangling of Vanlandingham was the cause of death. Although appellant disputed that his actions killed Vanlandingham, there was no evidence presented at trial of any other potential cause of death. Because appellant admitted to the conduct the jury concluded caused Vanlandingham's death, identity was not an issue in the case.

A second requirement for testing is that the movant must show by a preponderance of the evidence that he would not have been convicted if the DNA testing had revealed exculpatory results. *Id.* art. 64.03(a)(2)(A). This showing is not made if the exculpatory test results would "merely muddy the waters." *Rivera v. State*, 89 S.W.3d 55, 59 (Tex. Crim. App. 2002).

Appellant argues that, if a third person's DNA were found on Vanlandingham, this would support his defensive theory that another person, such as Carlos, was responsible for the murder.

-3-

The biological evidence available for testing in this case was a "head hair" and "hairs from hands." The evidence was undisputed that numerous people, including Carlos, were with Vanlandingham shortly before he was killed. Accordingly, even if the hairs found on Vanlandingham belonged to someone else, this fact would neither prove that person's guilt nor disprove appellant's. *See Bell v. State*, 90 S.W.3d 301, 306 (Tex. Crim. App. 2002) (en banc) (presence of another person's DNA at crime scene will not, without more, constitute affirmative evidence of movant's innocence). Again, appellant admitted to the conduct the jury concluded caused Vanlandingham's death. At best, the requested DNA evidence would only "muddy the waters." The trial court did not err in concluding that DNA testing was not required.

We overrule appellant's sole issue and affirm the trial court's order.

DAVID EVANS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
131547F.U05

–4–



# Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

TIMOTHY SCOTT HARRIMAN,
Appellant

No. 05-13-01547-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 5, Dallas County, Texas
Trial Court Cause No. F94-01553-ML.
Opinion delivered by Justice Evans. Justices
Francis and Stoddart participating.

Based on the Court's opinion of this date, the order of the trial court is **AFFIRMED**.


Judgment entered this 4th day of May, 2015.