

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-17-00405-CR

DAVID DURAN                                                          APPELLANT

V.

THE STATE OF TEXAS                                                         STATE

----------

### FROM THE 211TH DISTRICT COURT OF DENTON COUNTY
### TRIAL COURT NO. F-2003-0427-C

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellant David Duran appeals the trial court's denial of his second motion for chapter 64 DNA testing. In several issues, Duran argues that the trial court erred by not ordering the testing and by not appointing counsel to represent him. We will affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. BACKGROUND

In 2003, the State charged Duran with aggravated sexual assault of his cousin, C.D., who was ten years old at the time of the assault. *Duran v. State*, 163 S.W.3d 253, 254–55 (Tex. App.—Fort Worth 2005, no pet.). Duran pleaded not guilty. *Id.* At trial, the trial court determined that C.D.'s mother, Mother, was the proper outcry witness because she was the first person C.D. told about the sexual assault. *Id.* Mother testified that Duran is her husband's nephew. *Id.* Mother stated that Duran had come to stay at their house for a weekend around June 1, 2002. *Id.* She stated that after Duran left, C.D. began having emotional and behavioral problems. *Id.* Mother averred that around January 12, 2003, more than six months after the assault, C.D. told her she wanted to talk about the problems she had been having. *Id.* Mother stated that during this conversation, C.D. told her that Duran had raped her during the weekend that he had stayed at their house. *Id.*

C.D. testified at trial that on one of the weekend mornings that Duran had stayed at their house, she went downstairs to watch cartoons. *Id.* Although C.D. could not specifically remember if this had occurred on Sunday morning, Mother testified that it had. *Id.* C.D. stated that Duran was asleep on the couch and that he woke up when she turned on the television. *Id.* C.D. testified that Duran said something to her that scared her; however, she could not remember what. *Id.* She said that she got up and tried to run upstairs but that Duran grabbed her by

her ankles, took her into the downstairs bathroom, and locked the door. *Id.* She testified that Duran then laid her down on the bathroom floor, pulled her pants down, and "'stuck his private in [her].'" *Id.* C.D. said that Duran then picked her up, pushed her over the bathroom sink, and "'tried to from behind." *Id.* She also stated that he was covering her mouth during this time. *Id.* She testified that "'[i]t hurt a lot'" and that she was crying. *Id.* She further stated that she "'felt some wet stuff'" and that he pulled up his pants, warned her not to tell anyone, and left. *Id.* Significantly, because C.D.'s outcry occurred several months after the assault, investigators, including nurses and doctors, did not obtain a DNA sample from C.D. Because no DNA existed and because all of the witnesses identified Duran as the assailant, identity was not an issue at trial.

At the conclusion of trial, a jury found Duran guilty of aggravated sexual assault and assessed his punishment at confinement for life and a $10,000 fine.

Duran appealed his conviction to this court and argued that Mother was an unreliable outcry witness, that the trial court erred by denying his request for a limiting instruction on Mother's testimony, and that the trial court erred by allowing a clinical psychologist to testify about facts learned from Duran at a time when she was not licensed in Texas. *Id.* We affirmed the trial court's judgment. *Id.*

Since his conviction, Duran has become quite the prolific pro se litigant, filing numerous meritless applications for habeas relief with the court of criminal

3

appeals—so many, in fact, that the court barred his claims from review for abuse of writ on May 13, 2009. And since his conviction, Duran has filed two motions for chapter 64 DNA testing (including the one that is the basis of this appeal). *See Duran v. State*, No. 02-08-00378-CR, 2009 WL 417287, at *1 (Tex. App.—Fort Worth Feb. 19, 2009, no pet.) (mem. op., not designated for publication). In his appeal from the trial court's denial of his first motion, this court determined that Duran's appeal was untimely. *Id.* This is an appeal from the trial court's denial of his second motion.

### III. DISCUSSION

Since timely filing this appeal, Duran has filed more than fifty motions in this court. These handwritten motions are difficult to read because the penmanship is often poor and sometimes illegible. Duran rarely makes complete, coherent arguments; rather, he often cites a case and claims a position that is not entirely on point with that case. And often the argument Duran makes does not fall within the purview of a chapter 64 motion and appeal. Nonetheless, this court identifies that Duran is asking us to review whether the trial court erred by denying his second motion for DNA testing and whether the trial court erred by not appointing counsel to represent him related to the motion.

#### A. Identity Not an Issue

In multiple issues, gleaned from numerous filings, Duran complains that the trial court erred by not allowing him to test C.D.'s blood in this case, blood

4

that was drawn from C.D. one month after the assault for reasons unrelated to the State's charges. The gist of Duran's claims is that DNA evidence existed one month after he assaulted C.D., that the sample of C.D.'s blood should have been provided to him during trial, and that it now should be tested to show that his DNA was not present in C.D.'s blood a month after the assault. The State argues, among several arguments, that because identity was not an issue at Duran's original trial, he cannot satisfy the strictures of chapter 64 and that thus, the trial court did not err by denying Duran's second chapter 64 motion for DNA testing. We agree with the State.

A convicting court may order forensic DNA testing only if the court finds that (1) the evidence still exists, is in a condition making DNA testing possible, and has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect; (2) there is a reasonable likelihood that the evidence contains biological material suitable for DNA testing; (3) *identity was or is an issue in the case*; (4) the convicted person establishes by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing; and (5) the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or the administration of justice. Tex. Code Crim. Proc. Ann. art. 64.03 (West 2018); *Reger v. State*, 222 S.W.3d

510, 514 (Tex. App.—Fort Worth 2007, pet ref'd), *cert. denied*, 552 U.S. 1117 (2008).

Here, identity was not an issue in the State's case against Duran at the original trial. Witness testimony identified Duran as the assailant, and no DNA evidence related to the assault was obtained. Even assuming that there exist blood samples taken from C.D. one month after Duran assaulted her,[2] because identity was not and is not an issue, the trial court properly denied his chapter 64 motion for DNA testing. *Reger*, 222 S.W.3d at 514 ("[I]f identity was not or is not still an issue in the case, then the trial court cannot order DNA testing."); *see Bell v. State*, 90 S.W.3d 301, 308 (Tex. Crim. App. 2002) ("Chapter 64 requires that identity 'was or is' an issue, not that future DNA testing could raise the issue."). We overrule Duran's issues complaining that the trial court erred by denying his chapter 64 motion for DNA testing.

## B.     The Trial Court Did Not Err By Not Appointing Counsel

In the remainder of his issues, Duran argues that the trial court erred by not appointing counsel to assist him with this chapter 64 motion. We disagree.

If a convicted person intends to file a motion for post-conviction DNA testing, the trial court shall appoint counsel to the applicant if (1) the applicant tells the trial court that he wishes to submit an application for post-conviction

---

[2]The State contends that the sample Duran is referring to was destroyed years ago.

6

DNA testing; (2) the trial court finds "reasonable grounds" for the application to be filed; and (3) the trial court determines the applicant is indigent.  Tex. Code Crim. Proc. Ann. art. 64.01(c) (West 2018).  In short, entitlement to court-appointed counsel in this context is conditioned on the trial court finding, in relevant part, that "reasonable grounds" exist for filing the motion for post-conviction DNA testing.  *Gutierrez v. State*, 307 S.W.3d 318, 321 (Tex. Crim. App. 2010).

Because identity was not and is not an issue, there were no reasonable grounds for a chapter 64 DNA testing motion to be filed.  Therefore, Duran was not entitled to appointed counsel; thus the trial court did not err by not appointing him counsel.  We overrule the remainder of Duran's issues.

### C.    Duran's Numerous Pro Se Filings

As stated above, Duran has filed more than fifty motions in this court since perfecting his appeal.  This court has already ruled on some of these motions.  Some of Duran's currently pending motions are now moot because of this court's holdings in this opinion.  His other currently pending motions either make no sense or they deal with issues that should have been part of his direct appeal and not part of his appeal from the trial court's denial of his chapter 64 motion for DNA testing.  We deny all of his currently pending motions.

## IV. CONCLUSION

Having overruled Duran's issues on appeal and having denied his currently pending motions, we affirm the trial court's order.

/s/ Bill Meier
BILL MEIER
JUSTICE

PANEL: MEIER and BIRDWELL, JJ.; and REBECCA SIMMONS, J. (Sitting by Assignment).

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 21, 2018