**Reversed, Remanded, and Opinion Filed August 23, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## Nos. 05-22-01353-CR,
## 05-22-01354-CR,
## 05-22-01355-CR,
## 05-22-01356-CR

**THE STATE OF TEXAS, Appellant**

**V.**

**GUS MAYS, JR., Appellee**

**On Appeal from the 282nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F92-45732, F92-45733, F92-45734, & F92-45735**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Reichek, and Miskel
Opinion by Justice Partida-Kipness

In one issue, appellant the State challenges the trial court's granting of appellee Gus Mays, Jr.'s motion for Chapter 64 DNA testing. We sustain the State's issue and reverse and remand.

## BACKGROUND

Mays was convicted of capital murder and sentenced to life imprisonment in 1993 for the murders of Keenon Thomas, Rosetta "Nanna" Anderson, Charles

Wilson, and Roderick Thomas. The Amarillo Court of Appeals affirmed Mays's conviction in 1995.[1] In 2018, Mays filed a request under chapter 64 for the appointment of counsel to assist him in presenting his chapter 64 motion. *See* TEX. CODE CRIM. PROC. art. 64.01. In March 2019, the trial court appointed Mays an attorney and in April 2019, Mays filed his motion for post-conviction testing stating "there was evidence containing biological material secured" related to his offenses. Without stating what evidence he was referencing, Mays argued the evidence had not been previously subjected to DNA testing and there was a "substantial likelihood that DNA testing of the biological evidence would show that the defendant is not guilty of th[ese] charges." He also alleged "identity was and is an issue in this case" and there is a "reasonable probability that the defendant would not have been convicted if exculpatory results were obtained through DNA testing."

## A.    Facts Deduced from Trial

In 1992, Nanna, her adult grandsons Keenon and Roderick, and friend Wilson were murdered in Nanna's kitchen following a get-together. Keenon's parents had given him $1,100 earlier in the evening for vehicle expenses. Keenon's estranged wife, Kasandra, was also present and argued with Keenon earlier in the evening over her missing pager.

---

[1] *See Mays v. State*, Nos. 07-93-00266-CR, 07-93-00267-CR, 07-93-00268-CR, and 07-93-00269-CR (Tex. App.—Amarillo Feb. 22, 1995, pet. ref'd) (mem. op., not designated for publication).

Testimony from trial established Kasandra was in a sexual relationship with Mays and went to Mays's apartment after leaving Nanna's house. Kasandra stated she told Mays about her argument with Keenon and fell asleep. She left Mays's apartment around 5:30 a.m. and was later picked up by Keenon's mother to return to Nanna's where they discovered the four deceased bodies.

Later in the day, following the discovery of the bodies, Mays called Kasandra and said he had something to tell her. They met at Kasandra's friend Juanita Jones's apartment. When Kasandra stated she was concerned that whoever killed Keenon would come back for other family members, Mays told her she did not need to worry, the "people that they was after, they got," he was the "one who had done it," and he had taken "care of his business." According to Kasandra and Juanita's testimony, Mays explained in detail how he had killed the four victims. When Kasandra expressed doubt, Mays showed her Keenon's wallet which had been missing at the crime scene.

Mays told the two women he and an accomplice identified as "D" went to Nanna's home looking for Keenon. Mays stated he shot Keenon and Nanna in the kitchen, while "D" was outside with Roderick and Wilson. Mays instructed "D" to bring the other two men inside the kitchen. Roderick refused to lie on the floor as he was instructed, so Mays shot and killed him. Mays instructed "D" to shoot Wilson. "D" shot Wilson in the arm and leg, but Mays wanted Wilson dead, so Mays shot him, killing him. Mays said the two men left the house, but he went back in and shot

all the victims again to make sure they were dead. Afterwards, Mays said he used a wet towel to "wipe everything off, because wet towels don't have fingerprints."

Mays presented an "alibi" defense at trial. His friend Vincent Buford testified he had gone to Mays's apartment after an argument with his wife and slept over there in early October 1992, although Buford was unable to recall the specific date. Lola Renee Jones, Mays's girlfriend, stated Buford had slept at Mays's on the night of the murders and was there when she arrived at the apartment and stayed overnight. Mays testified and denied killing the victims, stating he had been at his apartment all evening with Buford and his cars were not in working order.

## B.    Chapter 64 Motion Hearing

The State filed a response to Mays's chapter 64 motion and stated it determined the items available for testing were: (1) fingernail clippings from Nanna and Roderick; (2) spent casings and bullet fragments introduced as evidence at trial; and (3) an envelope "said to contain apparent blood."

On November 8, 2022, the trial court held a hearing on Mays's motion. At the hearing, Mays requested the fingernail clippings be tested. He argued if the clippings were tested, they "would produce exculpatory results." Mays stated Dallas police collected several fingerprints from the crime scene, which were compared with multiple individuals who did not reside at the home. Mays alleged if he was "excluded from DNA testing of those fingernails, then one of those alternative suspects identified by the Dallas Police Department was identified through that DNA

–4–

testing that would, in fact, demonstrate . . . actual innocence that we would consider exculpatory on the part of my client."

The State alleged there were a "number of ways DNA can get under someone's fingernails." It stated this was not a "sole perpetrator case" and based on the evidence from trial, they knew "there were two perpetrators," one of which was Mays and the other one was unknown. It also argued there was "no reason to believe Mays's DNA–or [Mays's alleged] perpetrator's DNA would be under the fingernails of these people" due to the fact the victims were shot while attempting to flee.

The trial court stated it granted Mays's request for testing. The State asked for findings of fact and conclusions of law. None were filed. This appeal followed. *See id*. art. 44.01(a)(6).

## ANALYSIS

Chapter 64 of the code of criminal procedure allows a convicted person to "submit to the convicting court a motion for forensic DNA testing of evidence containing biological material." *Id*. art. 64.01(a-1). This motion may request testing of evidence that was secured in relation to the offense comprising the underlying conviction and was in the possession of the State during the trial but either was not previously tested or, although previously tested, can be tested with newer techniques which can provide more accurate and probative results. *Id*. art. 64.01(b). A convicting court may order testing if the evidence in question "(i) still exists and is in a condition making DNA testing possible; and (ii) has been subjected to a chain

of custody sufficient to establish it has not been substituted, tampered with, replaced, or altered in any material respect; and identity was or is an issue in the case." *Id*. art. 64.03(a)(1). Further, the convicted person has the burden of showing by a preponderance of the evidence "the person would not have been convicted if exculpatory results had been obtained through DNA testing; and the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence." *Id*. art. 64.03(a)(2); *see State v. Swearingen*, 424 S.W.3d 32, 38 (Tex. Crim. App. 2014).

When reviewing a judge's ruling on a chapter 64 motion, we use a bifurcated standard: we give almost total deference to the judge's resolution of historical fact issues and applications of law to fact issues turning on witness credibility and demeanor, but we consider *de novo* all other applications of law to fact questions. *Ex parte Gutierrez*, 337 S.W.3d 883, 890 (Tex. Crim. App. 2011); *see also Reed v. State*, 541 S.W.3d 759, 768 (Tex. Crim. App. 2017).

In determining whether appellant has met his burden under chapter 64, we must presume the testing of the fingernail clippings would exclude him as the donor of the biological material tested. *See Reed*, 541 S.W.3d at 774. We consider whether the exculpatory results "would alter the landscape if added to the mix of evidence that was available at the time of trial." *Holberg v. State*, 425 S.w.3d 282, 285 (Tex. Crim. App. 2014); *Robinson v. State*, No. 05-22-00465, 2023 WL 3749802, at *5 (Tex. App.—Dallas June 1, 2023, no pet. h.) (mem. op., not designated for

publication). If the results would "merely muddy the waters," appellee has not met his burden. *Gutierrez*, 337 S.W.3d at 892.

Exculpatory results do not relieve appellee from showing the likelihood he would not have been convicted if the jury had been able to consider and to weigh this exculpatory evidence against the other available evidence. *See Reed*, 541 S.W.3d at 774; *Holberg*, 425 S.W.3d at 287; *Robinson*, 2023 WL 3749802, at * 5. "Texas courts have consistently held that a movant does not satisfy his burden under article 64.03 if the record contains other substantial evidence of guilt independent of that for which the movant seeks DNA testing." *Swearingen v. State*, 303 S.W.3d 728, 736 (Tex. Crim. App. 2010).

The State argues even if third-party DNA was found under the fingernail clippings, this was not a "lone assailant" case, and the finding would not prove Mays's actual innocence. The evidence presented at trial was Mays and an unknown accomplice only identified as "D" committed the murders. The jury charge contained a law of parties instruction allowing the jury to convict Mays as the principle or as a party to the offense.

Here, the victims could have encountered another person prior to or during the commission of the offense and foreign DNA alone would not factually exclude Mays from having committed the murders. *See Swearingen*, 424 S.W.3d at 38–39. "There are many ways someone else's DNA could have ended up in the victim's fingernails." *Id*. at 39. "The presence of another person's DNA at the crime scene

will not, without more, constitute affirmative evidence of appellant's innocence." *Bell v. State*, 90 S.W.3d 301, 306 (Tex. Crim. App. 2002) (en banc). The evidence showed there was a get-together at Nanna's house earlier in the evening with multiple people present. It is possible any DNA found under the fingernail clippings could have come from interactions at the get-together or from an earlier time. There was no evidence presented at trial showing the victims scratched Mays or "D." Based on the testimony, it appeared all four victims were shot from a short distance in Nanna's kitchen based on the locations of the bodies.

Mays did not meet his burden to show he would not have been convicted if DNA testing of the fingernail clippings had produced an exculpatory result. The trial court erred in granting Mays's chapter 64 motion. We sustain the State's sole issue.

## CONCLUSION

Based on the record before us, we sustain the State's sole issue. We reverse the trial court's granting of Mays's chapter 64 motion and remand for proceedings in accordance with this opinion.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b).
221353F.U05

—8—



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-22-01353-CR      V.

GUS MAYS, JR., Appellee

On Appeal from the 282nd Judicial District Court, Dallas County, Texas Trial Court Cause No. F92-45732. Opinion delivered by Justice Partida-Kipness. Justices Reichek and Miskel participating.

Based on the Court's opinion of this date, the judgment of the trial court is **REVERSED** and the cause **REMANDED** for further proceedings consistent with this opinion.

Judgment entered this 23rd day of August 2023.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-22-01354-CR     V.

GUS MAYS, JR., Appellee

On Appeal from the 282nd Judicial District Court, Dallas County, Texas Trial Court Cause No. F92-45733. Opinion delivered by Justice Partida-Kipness. Justices Reichek and Miskel participating.

     Based on the Court's opinion of this date, the judgment of the trial court is **REVERSED** and the cause **REMANDED** for further proceedings consistent with this opinion.

Judgment entered this 23rd day of August 2023.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-22-01355-CR      V.

GUS MAYS, JR., Appellee

On Appeal from the 282nd Judicial District Court, Dallas County, Texas Trial Court Cause No. F92-45734. Opinion delivered by Justice Partida-Kipness. Justices Reichek and Miskel participating.

Based on the Court's opinion of this date, the judgment of the trial court is **REVERSED** and the cause **REMANDED** for further proceedings consistent with this opinion.

Judgment entered this 23rd day of August 2023.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-22-01356-CR     V.

GUS MAYS, JR., Appellee

On Appeal from the 282nd Judicial District Court, Dallas County, Texas Trial Court Cause No. F92-45735. Opinion delivered by Justice Partida-Kipness. Justices Reichek and Miskel participating.

Based on the Court's opinion of this date, the judgment of the trial court is **REVERSED** and the cause **REMANDED** for further proceedings consistent with this opinion.

Judgment entered this 23rd day of August 2023.